George Santini, WSB#5-1992
Attorney for Plaintiff
Ross, Ross & Santini, LLC
2402 Pioneer Avenue
Cheyenne, WY 82001
(307) 632-8957

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 MAY 19  AM 11: 52

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BRIAN GARDUNO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | Civil No. 17-cv-84-S |
| | ) | |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Brian Garduno, acting by and through his attorneys, George Santini of Ross, Ross & Santini, LLC, and Michael D. Newman, of Hampton & Newman, LC, states and alleges as follows for his Complaint in the above entitled matter:

1. This is an action arising under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 USC §1001 et seq.

### I.    Jurisdiction and Venue

2. The Court has subject matter jurisdiction over the action pursuant to 28 USC §1331 and 29 USC §1132(c) and (f).

3. Venue is proper in the United States District Court for the District of Wyoming pursuant to 28 USC §1391(a) and (b), and 29 USC §1132(e)(2).

### II.    Parties

4. Plaintiff, Brian Garduno, at all pertinent times hereto, was a resident of the State of Wyoming.

1

5. Defendant Life Insurance Company of North America ("LINA"), is a Pennsylvania Insurance Company, registered with the Wyoming Insurance Commissioner, and does business in the State of Wyoming.

6. Weatherford International, Inc., is a sponsor and plan administrator of the Weatherford International Inc., Long Term Disability Plan (hereinafter "Plan"), which as an "employee benefit plan", as that term is defined by 29 USC §1002(3).

7. LINA issued group insurance policy number LK-980155 which provides long term disability insurance benefits to eligible employees of Weatherford International, Inc. ("the Policy"). (Ex. 1)

8. Garduno was an employee of Weatherford International, Inc., and, by virtue of his employment, was a "participant" in the Plan as that term is defined by 29 USC §2002(7), and an insured under the Policy.

9. Upon information and belief, LINA is the designated claim administrator for the long-term disability Plan and makes all determinations regarding claimants eligibility for long-term disability benefits under the Policy.

10. Defendant LINA, as insurer and underwriter of the Policy, has an obligation to pay benefits under the terms of the Policy for all approved claims.

11. If Mr. Garduno is deemed entitled to disability benefits under the Policy, Defendant LINA is responsible for paying any benefits under the Policy from its own funds.

12. The ERISA statute requires, at 29 USC §1133, a mechanism for administrative or internal appeals of benefit denials. Following Defendant's termination of his long-term disability claim, Garduno submitted an appeal as required through his attorney.

13. Mr. Garduno has exhausted his required administrative remedies.

### III.    General Allegations

14. Garduno was employed by Weatherford International, Inc. or its predecessors in interest for 32 years, until June of 2011 when he was forced to stop working due to disabling injuries and medical conditions.

15. In June of 2011, Garduno underwent surgery to remove hardware and revision of a lumbar fusion which had been previously performed.  In addition to his lumbar spine injuries, Garduno, during the course of his employment, suffered from numerous other orthopedic and medical issues which impacted his ability to continue to work including vascular narcosis of his right hip requiring a right total hip arthroplasty, 2 crushing injuries to his left foot resulting in 4 surgeries on his left foot, coronary artery disease, diabetes mellitus, hypertension, pulmonary fibrosis, fibromyalgia syndrome, diffuse osteoarthritis and chronic pain.

16. As a result of his conditions, Mr. Garduno ceased working in a full-time capacity on June 5, 2011.

17. Garduno received short term disability benefits through the Weatherford International, Inc., Short Term Disability Plan.

18. In November of 2011, Garduno was notified by Weatherford that his short-term disability benefits were payable up to a maximum of 180 days.  Weatherford advised that since he had been unable to work and was receiving short term disability benefits for over 120 days, he was eligible to apply for long term disability benefits.  In order to apply for long term disability benefits (LTD), Garduno was directed to complete, sign and date the employee statement of the CIGNA Group long term disability form and sign and a disclosure authorization for CIGNA Group Insurance.

19. LINA is a subsidiary of CIGNA Corporation.

20. On December 5, 2011, LINA notified Garduno that his application for long term disability benefits had been received.  LINA requested additional information

from Garduno including filling out a Disability Questionnaire and Activities of Daily Living form, submit valid proof of his age such as a copy of his driver's license or birth certificate and a signed reimbursement agreement. In addition, Garduno was informed that he should apply for Social Security disability benefits which would result in a reduction in the amount he would receive under the terms of the long-term disability plan if he was eligible. Garduno was advised that LINA would assist Garduno in pursuit of Social Security Disability benefits at no cost to him and was advised to keep LINA advised as to his Social Security claim. (Ex. 2)

21. Garduno complied with the directions of LINA and filled out the Disability Questionnaire and Activities of Daily Living form which he returned to LINA. Garduno had already applied for Social Security disability benefits.

22. Garduno's wife called LINA in January of 2012 to inform LINA that he had been awarded Social Security Disability benefits. A copy of the order of award was faxed to LINA.

23. On January 26, 2012, LINA denied Garduno's claim for long term disability benefits. (Ex. 3)

24. The Policy defined "Disability/Disabled as:

> "The employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties as his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled is, solely due to Injury or Sickness, he or she is:
> 1. Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. Unable to earn 60% or more of his or her Indexed Earnings.

> The Insurance Company will require proof of earnings
> and continued Disability."

25. Garduno, through his attorneys, objected to the decision and requested an administrative appeal of the decision in a letter dated April 20, 2012. In that letter, Garduno's attorneys requested a complete copy of the applicable disability Plan documents together with copies of all documents relied upon in reaching its decision not to award long term disability benefits. (Ex. 4)

26. LINA acknowledged receipt of the request for appeal on April 24, 2012. Despite Garduno's faxing an authorization to release information to his attorneys, LINA did not provide any of the documents requested by Garduno's attorneys in the April 20, 2012 appeal request.

27. Garduno, through his attorneys, requested and was granted an extension of time to submit additional information in support of his application on July 26, 2012. LINA agreed to stay the appeal process until that information was submitted.

28. Garduno, through his attorneys, on November 13, 2013, submitted additional information including extensive medical records, a copy of the Social Security Administrations Retirement Survivors and Disability Notice of Award; a residual functional capacity evaluation; and opinion letters from his treating physicians - Kade T. Hunstman, MD, and Mark Sanders, PA-C and Jeffrey D. Jackson, MD.

29. Following receipt of the additional information from Garduno, LINA began its appeal process. During the course of the appeal process, LINA notified Garduno's attorney that it would need an additional 45 days to make a decision on the appeal due to its requesting an independent medical peer review of Garduno's file including the additional information submitted in November 2013.

30. LINA received a copy of the peer review report on January 23, 2014. Following receipt of that report, LINA, on February 14, 2014, again requested additional time

in which to make its decision on the appeal in order to obtain a clarification from Weatherford International, Inc. concerning Garduno's job description.

31. On February 26, 2014, Garduno, through his attorney, acknowledged receipt of the correspondence requesting additional time and requested that a copy of the Peer Review report regarding Mr. Garduno be sent for review.

32. LINA sent a letter to Garduno on March 12, 2014, overturning its denial of LTD benefits (Ex. 5). Garduno's attorney was not sent a copy of the letter by LINA

33. A copy of the Peer Review report prepared by Dr. Lewis was forwarded to Garduno's attorney on March 19, 2014. None of the other documents requested by Garduno's attorney on April 20, 2012 were provided.

34. On March 24, 2014, LINA issued a denial of benefits letter in which it was indicated that it had completed its review and determined that as of December 3, 2013, Garduno no longer remained disabled as defined under its policy. (Ex. 6)

35. Prior to its March 24, 2014, denial, LINA did not request any additional information concerning Garduno's current medical status or physical capacity beyond that which was submitted in conjunction with his claims for disability benefits under the Policy's own occupation definition. Specifically, LINA did not request any additional or new information concerning Garduno's activities of day-to-day living, functional limitations or updated medical records. Instead it relied upon his disability questionnaire which was completed in December of 2011 and Peer Review report conducted by Dr. Jamie L. Lewis, MD, who reviewed medical records dating from 2006 through May 30, 2013.

36. In the March 24, 2014, denial letter, Garduno was advised that he could submit an administrative appeal request by submitting an appeal within 180 days of his receipt of the letter and indicated he could submit additional information in support of his claim.

37. Garduno, through his attorney, on April 4, 2014, sent a certified mail, return receipt requested, letter to LINA to appeal the denial of his LTD benefits. (Ex. 7)

38. LINA did not acknowledge receipt of the appeal letter.

39. Under the terms of the Policy, once a request for review has been received by LINA, a prompt and complete review of the claim is required. During the review, Claimant (or the Claimant's duly authorized representative) has the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. Any medical or vocational experts consulted by LINA are required to be identified. Issues and comments that might affect the outcome of the review may also be submitted.

40. According to the Policy claims procedures, LINA has 45 days from the date it receives a request to review a denied claim for disability benefits and provide its decision. Under special circumstances, LINA is allowed to provide written notice that it requires more time to review the claim and extend the review for an additional 45 days. Once its review is complete, LINA is required to state in writing the results of its review and indicate the plan provisions upon which it based its decision.

41. LINA did not complete its review within the required time frame. LINA has never provided any notice or acknowledgement to Garduno or his representatives that it had received the April 4, 2014 letter of appeal.

42. On September 16, 2015, Garduno's attorney sent a letter to LINA enclosing a detailed medical report by Dr. Bruce Y. Newton, M.D. requesting LINA reconsider their denial of Garduno's long term disability benefits based on the additional medical information. (Ex. 8)

43. LINA sent out 2 letters directly to Garduno on October 16, 2015. Those letters were not sent or copied to Garduno's attorney.

44. In one of the letters, LINA wrote Garduno that his claim was denied as indicated in its March 14, 2014 letter.  LINA acknowledged receiving additional medical information from Garduno's attorneys on September 21, 2015, but stated it did not change the decision to deny LTD benefits.  (Ex. 9)

45. The second letter, also signed on the same date by the same disability claim manager, acknowledged receipt of a request for appeal.  LINA indicated the appeal was being referred to its Disability Appeals team to ensure an independent review.  (Ex. 10)

46. On October 21, 2015, LINA responded to Garduno's attorney with a letter in which recited that, in order to appeal the March 24, 2014 decision, Garduno had to submit a written request for review within 180 days.  LINA, ignoring the April 4, 2014 letter, asserted that Garduno's request for review of the March 24, 2014 denial was not received until September 16, 2015, and was untimely.  LINA requested that Garduno's attorney provide a written reason for the delay in requesting a review of the claim decision within 30 days.  (Ex. 11)

47. Garduno's attorney received LINA's October 21, 2015 letter on October 30, 2015.

48. On November 20, 2015, a certified letter and fax were sent to LINA by Garduno's attorney indicating that a request for review of the decision to deny long term disability benefits had been sent on April 4, 2014.  Garduno's attorney indicated that the September 16, 2015 correspondence was simply providing additional information for review.  (Ex. 12)

49. LINA sent a letter to Garduno's attorney on November 20, 2015 indicating that it had not received a response to its letter of October 21, 2015 and that there would be no further review of Garduno's claim decision.  (Ex. 13)

50. Garduno, through his attorney, responded on January 13, 2016, stating he had responded within the 30 day time period set forth in the October 21, 2015 correspondence from LINA.  Again he asked that LINA review Garduno's claims

in light of the information which was submitted together with the records in September of 2015. (Ex. 14)  LINA did not respond.

51. On April 22, 2016, LINA was requested by certified mail to provide a full and complete copy of its claims file so that Garduno's attorney could review the information relied upon by CIGNA in reaching its decision to take no further action on Mr. Garduno's claim. (Ex. 15)

52. LINA did not respond to this request or provide a copy of the requested claims file.

53. A second letter was sent to LINA on July 13, 2016, renewing the demand for a certified copy of the complete claims file and requesting a copy of the plan summary and instructions on how to file appeals.

54. In apparent response to this request, LINA sent what purported to be a copy of the complete claims file to Garduno's attorney on July 26, 2016.  Included in that file was a copy of the April 4, 2014, request for appeal letter.

55. On information and belief, LINA's processing and handling of Garduno's claim for long term disability benefits under the any occupation definition did not comply with its own internal guidelines for review and investigation of long term disability claims under the any occupation definition.  LINA did not undertake any independent investigation or seek any additional information relating to Garduno's claims for long term disability benefits under the any occupation definition.  Instead, it relied wholly upon information obtained during its consideration of his appeal from denial of long term disability benefits under the his own occupation definition.

56. The evidence in LINA's claim files establishes that Garduno was and continues to be disabled pursuant to the provisions of the Policy.

57. In terminating the LTD claim, LINA ignored all documentation and information it had available to it from Plaintiff, treating medical providers and others showing

that the Plaintiff was incapable of performing any occupation and earning more than 80% of his indexed covered earnings in any such occupation.

58. Defendant LINA's termination of LTD benefits is and has been in derogation of Plaintiff's rights by contract and pursuant law.

59. Defendant's termination of LTD benefits was not a substantially justified decision, was arbitrary and capricious, was unsupported by substantial evidence, constituted abuse of any discretion allowed, and was wrongful under the circumstances.

60. LINA's decision to terminate the insured's LTD benefits was influenced by the financial gains to be achieved by not paying Plaintiff his monthly disability insurance benefits.

61. Defendant LINA suffers from a structural conflict of interest as it decides whether the claimants, including Plaintiff, will receive benefits under the Policy and is required to pay those benefits.

62. The claim determination by LINA should be subject to de novo review because LINA acted in its own financial interests, and LINA does not have or maintain neutrality or objectiveness of a fiduciary under the circumstances.

63. The claim determination by LINA under the Policy should be subject to de novo review because of serious procedural irregularities existing in the handling of Plaintiff's claims including its failure to acknowledge Garduno's attorneys, April 4, 2014, letter requesting review following LINA's March 24, 2014, decision terminating LTD benefits as of December 3, 2013.

64. Since original filing his claim for LTD disability benefits in 2012, Garduno has been and remains disabled as that term is defined by the LTD policy.

65. Garduno is entitled to benefits retroactive to December 3, 2013 (the date LINA terminated his LTD benefits) due and owing through the date of judgement and through the end of the Plan period.

## IV.    Claim for Relief

### (Claim for Benefits Due – ERISA § 502(a)(1)(B))

66. ERISA § 502(a)(1)(B), 29 USC §1132(a)(1)(B) provides a plan participant such as Plaintiff with a civil action to recover benefits due under the terms of a plan, to enforce his rights under the terms of the plan and/or to clarify rights to future benefits under the terms of a plan.

67. The evidence presented to Defendants establishes that Garduno has been continuously disabled under the terms of the Plan from the date benefits began through present.  He is entitled to payment of the past-due long-term disability benefits available to him under the terms of the Plan.

68. At all times relevant, Garduno has been entitled to long-term disability benefits under the Plan.  By denying his claims for benefits, and by related acts and omissions, Defendant LINA has violated, and continues to violate, the terms of the LTD Plan.

69. Pursuant to 29 USC § 1132(g), Garduno is entitled to an award of his reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant, and that the Court provide relief against Defendant as follows:

a) Declare that Plaintiff is disabled within the meaning of the Policy and is entitled to long-term disability benefits under the Defendant's Plan;

b) Order LINA to pay past-due long-term disability benefits to Garduno from the date benefits became due through the date of judgment, together with statutory interest on each monthly payment from the date it became due to the date to the end of the policy period;

c) Order the Defendant to pay Garduno the costs of the suit herein, and reasonable attorneys' fees, pursuant to ERISA § 502(g)(1), 29 USC § 1132(g);

d)  Determine and then declare that Garduno is entitled to receive benefits for so long as he continues to meet the terms and conditions in the Plan for receipt of benefits; and

e)  Provide such other and further equitable relief as this Court deems just and proper.

**DATED** this _19th_ day of May, 2017.

George Santini, WSB#5-1992
Attorney for Plaintiff
Ross, Ross & Santini, LLC
2402 Pioneer Avenue
Cheyenne, WY 82001

Michael D. Newman, WBS#5-2510
Attorney for Plaintiff
Hampton & Newman, LC
118 3rd St.
P.O. Box 1000
Rock Springs, WY 82902-1000

1

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET                                          GROUP POLICY
PHILADELPHIA, PA 19192-2235
(800) 732-1603          TDD (800) 552-5744
**A STOCK INSURANCE COMPANY**

**POLICYHOLDER:**                    Weatherford International, Inc.

**POLICY NUMBER:**                   LK-980155

**POLICY EFFECTIVE DATE:**           September 1, 2010

**POLICY ANNIVERSARY DATE:**         September 1

This Policy describes the terms and conditions of coverage. It is issued in Texas and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.

Scott Kern, Corporate Secretary              Matthew G. Manders, President

TL-004700                                                                    O/O v-2

## TABLE OF CONTENTS

SCHEDULE OF BENEFITS ........................................................................................... 1

SCHEDULE OF BENEFITS FOR CLASS 1 ................................................................. 2

ELIGIBILITY FOR INSURANCE .............................................................................. 5

EFFECTIVE DATE OF INSURANCE ......................................................................... 5

TERMINATION OF INSURANCE .............................................................................. 5

CONTINUATION OF INSURANCE ............................................................................ 5

DESCRIPTION OF BENEFITS .................................................................................. 7

EXCLUSIONS ............................................................................................................ 12

CLAIM PROVISIONS ............................................................................................... 12

ADMINISTRATIVE PROVISIONS ........................................................................... 14

GENERAL PROVISIONS .......................................................................................... 15

DEFINITIONS ........................................................................................................... 16

## SCHEDULE OF BENEFITS

**Premium Due Date:**    The last day of each month

**Classes of Eligible Employees**

Class 1          All active, Full-time United States non-bargaining Employees of the Employer residing
                 in the United States, scheduled to work at least 30 hours per week.

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:     After 180 days of Active Service

For Employees hired after the Policy Effective Date:     After 180 days of Active Service

**Definition of Disability/Disabled**

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1.    unable to perform the material duties of his or her Regular Occupation; and
2.    unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1.    unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2.    unable to earn 60% or more of his or her Indexed Earnings.

The Insurance Company will require proof of earnings and continued Disability.

**Definition of Covered Earnings**

Covered Earnings means an Employee's base wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

It does not include amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

| | |
|---|---|
| **Elimination Period** | 180 days |
| **Gross Disability Benefit** | The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit. |
| **Maximum Disability Benefit** | $16,000 per month |
| **Minimum Disability Benefit** | The greater of $100 or 10% of an Employee's Monthly Benefit prior to any reductions for Other Income Benefits. |

**Disability Benefit Calculation**

The Disability Benefit payable to the Employee is figured using the Gross Disability Benefit, Other Income Benefits and the Return to Work Incentive. Monthly Benefits are based on a 30-day month. The Disability Benefit will be prorated if payable for any period less than a month.

During any month the Employee has no Disability Earnings, the monthly benefit payable is the Gross Disability Benefit less Other Income Benefits.  During any month the Employee has Disability Earnings, benefits are determined under the Return to Work Incentive.  Benefits will not be less than the minimum benefit shown in the Schedule of Benefits except as provided under the section Minimum Benefit.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

### Return to Work Incentive

During any month the Employee has Disability Earnings, his or her benefits will be calculated as follows.

The Employee's monthly benefit payable will be calculated as follows during the first 24 months disability benefits are payable and the Employee has Disability Earnings:

1.  Add the Employee's Gross Disability Benefit and Disability Earnings.
2.  Compare the sum from 1. to the Employee's Indexed Earnings.
3.  If the sum from 1. exceeds 100% of the Employee's Indexed Earnings, then subtract the Indexed Earnings from the sum in 1.
4.  The Employee's Gross Disability Benefit will be reduced by the difference from 3., as well as by Other Income Benefits.
5.  If the sum from 1. does not exceed 100% of the Employee's Indexed Earnings, the Employee's Gross Disability Benefit will be reduced by Other Income Benefits.

After disability benefits are payable for 24 months, the monthly benefit payable is the Gross Disability Benefit reduced by Other Income Benefits and 50% of Disability Earnings.

No Disability Benefits will be paid, and insurance will end if the Insurance Company determines the Employee is able to work under a modified work arrangement and he or she refuses to do so without Good Cause.

## Additional Benefits

### Survivor Benefit

| | |
|---|---|
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus the amount of any Disability Earnings by which the benefit had been reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

The later of the Employee's SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Act on the Policy Effective Date.

**Initial Premium Rates**

$.21 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $26,667.

TL-004774

4

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee will be insured on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

## TERMINATION OF INSURANCE

An Employee's coverage will end on the earliest of the following dates:
1.    the date the Employee is eligible for coverage under a plan intended to replace this coverage;
2.    the date the Policy is terminated;
3.    the date the Employee is no longer in an eligible class;
4.    the day after the end of the period for which premiums are paid;
5.    the date the Employee is no longer in Active Service;
6.    the date benefits end for failure to comply with the terms and conditions of the Policy.

Disability Benefits will be payable to an Employee who is entitled to receive Disability Benefits when the Policy terminates, if he or she remains disabled and meets the requirements of the Policy. Any period of Disability, regardless of cause, that begins when the Employee is eligible under another group disability coverage provided by any employer, will not be covered.

TL-007505.00

## CONTINUATION OF INSURANCE

This Continuation of Insurance provision modifies the Termination of Insurance provision to allow insurance to continue under certain circumstances if the Insured Employee is no longer in Active Service. Insurance that is continued under this provision is subject to all other terms of the Termination of Insurance provisions.

Disability Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first.

If an Employee's Active Service ends due to personal or family medical leave approved timely by the Employer, insurance will continue for an Employee the later of 12 weeks or the period of time mandated by the family and medical leave laws of the state in which the employee is employed, if the required premium is paid when due.

If an Employee's Active Service ends due to any other leave of absence approved in writing by the Employer prior to the date the Employee ceases work, insurance will continue for an Employee for up to 12 weeks if the required premium is paid. An approved leave of absence does not include layoff or termination of employment.

If an Employee's Active Service ends due to any other excused short term absence from work that is reported to the Employer timely in accordance with the Employer's reporting requirements for such short term absence, insurance for an Employee will continue until the earlier of:
a.   the date the Employee's employment relationship with the Employer terminates;
b.   the date premiums are not paid when due;
c.   the end of the 30 day period that begins with the first day of such excused absence;
d.   the end of the period for which such short term absence is excused by the Employer.

Notwithstanding any other provision of this policy, if an Employee's Active Service ends due to layoff, termination of employment, or any other termination of the employment relationship, insurance will terminate and Continuation of Insurance under this provision will not apply.

If an Employee's insurance is continued pursuant to this Continuation of Insurance provision, and he or she becomes Disabled during such period of continuation, Disability Benefits will not begin until the later of the date the Elimination Period is satisfied or the date he or she is scheduled to return to Active Service.

TL-004716a (TX)

## TAKEOVER PROVISION

This provision applies only to Employees eligible under this Policy who were covered for long term disability coverage on the day prior to the effective date of this Policy under the Prior Plan provided by the Policyholder or by an entity that has been acquired by the Policyholder.

A.   This section A applies to Employees who are not in Active Service on the day prior to the effective date of this Policy due to a reason for which the Prior Plan and this Policy both provide for continuation of insurance. If required premium is paid when due, the Insurance Company will insure an Employee to which this section applies against a disability that occurs after the effective date of this Policy for the affected employee group. This coverage will be provided until the earlier of the date: (a) the employee returns to Active Service, (b) continuation of insurance under the Prior Plan would end but for termination of that plan; or (c) the date continuation of insurance under this Policy would end if computed from the first day the employee was not in Active Service. The Policy will provide this coverage as follows:

1.   If benefits for a disability are covered under the Prior Plan, no benefits are payable under this Plan.
2.   If the disability is not a covered disability under the Prior Plan solely because the plan terminated, benefits payable under this Policy for that disability will be the lesser of: (a) the disability benefits that would have been payable under the Prior Plan; and (b) those provided by this Policy. Credit will be given for partial completion under the Prior Plan of Elimination Periods and partial satisfaction of pre-existing condition limitations.

6

B. The Elimination Period under this Policy will be waived for a Disability which begins while the Employee is insured under this Policy if all of the following conditions are met:

1. The Disability results from the same or related causes as a Disability for which monthly benefits were payable under the Prior Plan;
2. Benefits are not payable for the Disability under the Prior Plan solely because it is not in effect;
3. An Elimination Period would not apply to the Disability if the Prior Plan had not ended;
4. The Disability begins within 6 months of the Employee's return to Active Service and the Employee's insurance under this Policy is continuous from this Policy's Effective Date.

C. Except for any amount of benefit in excess of a Prior Plan's benefits, the Pre-existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied under the Prior Plan's pre-existing condition limitation.

Benefits will be determined based on the lesser of: (1) the amount of the gross disability benefit under the Prior Plan and any applicable maximums; and (2) those provided by this Policy.

If benefits are payable under the Prior Plan for the Disability, no benefits are payable under this Policy.

TL-005108

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits to each class of Insureds.

**Disability Benefits**
The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

**Elimination Period**
The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes.

**Disability Benefit Calculation**
The Disability Benefit Calculation is shown in the Schedule of Benefits. Monthly Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month. If an Employee is working while Disabled, the Disability Benefit Calculation will be the Return to Work Incentive.

**Return to Work Incentive**
The Return to Work Incentive is shown in the Schedule of Benefits. An Employee may work for wage or profit while Disabled. In any month in which the Employee works and a Disability Benefit is payable, the Return to Work Incentive applies.

7

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

**Minimum Benefit**
The Insurance Company will pay the Minimum Benefit shown in the Schedule of Benefits despite any reductions made for Other Income Benefits. The Minimum Benefit will not apply if benefits are being withheld to recover an overpayment of benefits.

**Other Income Benefits**
An Employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, the Insurance Company may reduce the Disability Benefits by the amount of such Other Income Benefits.

Other Income Benefits include:

1.1. any amounts received (or assumed to be received\*) by the Employee or his or her dependents under:
- the Canada and Quebec Pension Plans;
- the Railroad Retirement Act;
- any local, state, provincial or federal government disability or retirement plan or law payable for Injury or Sickness provided as a result of employment with the Employer;
- any sick leave or salary continuation plan of the Employer;
- any work loss provision in mandatory "No-Fault" auto insurance.

1.2. any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive\*) on his or her own behalf or for his or her dependents; or which his or her dependents receive (or are assumed to receive\*) because of his or her entitlement to such benefits.

1.3. any Retirement Plan benefits funded by the Employer. "Retirement Plan" means any defined benefit or defined contribution plan sponsored or funded by the Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

1.4. any proceeds payable under any group insurance or similar plan. If other insurance applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay for its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

1.5. any amounts received (or assumed to be received\*) by the Employee or his or her dependents under any workers' compensation, occupational disease, unemployment compensation law or similar state or federal law payable for Injury or Sickness arising out of work with the Employer, including all permanent and temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

1.6. any amounts paid because of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined.

Dependents include any person who receives (or is assumed to receive\*) benefits under any applicable law because of an Employee's entitlement to benefits.

\*See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*
Any increase in Other Income Benefits during a period of Disability due to a cost of living adjustment will not be considered in calculating the Employee's Disability Benefits after the first reduction is made for any Other Income Benefits. This section does not apply to any cost of living adjustment for Disability Earnings.

*Lump Sum Payments*
Other Income Benefits or earnings paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over five years.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*
The Insurance Company will assume the Employee (and his or her dependents, if applicable) are receiving benefits for which they are eligible from Other Income Benefits. The Insurance Company will reduce the Employee's Disability Benefits by the amount from Other Income Benefits it estimates are payable to the Employee and his or her dependents.

The Insurance Company will waive Assumed Receipt of Benefits, except for Disability Earnings for work the Employee performs while Disability Benefits are payable; if the Employee:

1.  provides satisfactory proof of application for Other Income Benefits;
2.  signs a Reimbursement Agreement;
3.  provides satisfactory proof that all appeals for Other Income Benefits have been made unless the Insurance Company determines that further appeals are not likely to succeed; and
4.  submits satisfactory proof that Other Income Benefits were denied.

The Insurance Company will not assume receipt of any pension or retirement benefits that are actuarially reduced according to applicable law, until the Employee actually receives them.

*Social Security Assistance*
The Insurance Company may help the Employee in applying for Social Security Disability Income (SSDI) Benefits, and may require the Employee to file an appeal if it believes a reversal of a prior decision is possible.

The Insurance Company will reduce Disability Benefits by the amount it estimates the Employee will receive, if the Employee refuses to cooperate with or participate in the Social Security Assistance Program.

**Recovery of Overpayment**
The Insurance Company has the right to recover any benefits it has overpaid. The Insurance Company may use any or all of the following to recover an overpayment:
1.  request a lump sum payment of the overpaid amount;
2.  reduce any amounts payable under this Policy; and/or
3.  take any appropriate collection activity available to it.

The Minimum Benefit amount will not apply when Disability Benefits are reduced in order to recover any overpayment.

If an overpayment is due when the Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

**Successive Periods of Disability**

A separate period of Disability will be considered continuous:

1.   if it results from the same or related causes as a prior Disability for which benefits were payable; and

2.   if, after receiving Disability Benefits, the Employee returns to work in his or her Regular Occupation for less than 6 consecutive months; and

3.   if the Employee earns less than the percentage of Indexed Earnings that would still qualify him or her to meet the definition of Disability/Disabled during at least one month.

Any later period of Disability, regardless of cause, that begins when the Employee is eligible for coverage under another group disability plan provided by any employer will not be considered a continuous period of Disability.

For any separate period of disability which is not considered continuous, the Employee must satisfy a new Elimination Period.

## LIMITATIONS

**Limited Benefit Periods for Mental or Nervous Disorders**

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

a)   Anxiety disorders
b)   Delusional (paranoid) disorders
c)   Depressive disorders
d)   Eating disorders
e)   Mental illness
f)   Somatoform disorders (psychosomatic illness)
g)   Subjective Symptom Conditions

Subjective Symptom Conditions means any physical or mental or emotional symptom, feeling or condition reported by the Employee, or by his or her Physician, which cannot be verified using tests, procedures or clinical examinations that conform to generally-accepted medical standards. Subjective Symptom Conditions include, but are not limited to, headaches, pain, fatigue, stiffness, numbness, nausea, dizziness and ringing in ears.

If, before reaching his or her lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against his or her lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

**Limited Benefit Periods for Alcoholism and Drug Addiction or Abuse**

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1)   Alcoholism
2)   Drug addiction or abuse

If, before reaching his or her lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against his or her lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

### Pre-Existing Condition Limitation

The Insurance Company will not pay benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, or took prescribed drugs or medicines within 3 months before his or her most recent effective date of insurance.

The Pre-existing Condition Limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after an Employee is covered for at least 12 months after his or her most recent effective date of insurance, or the effective date of any added or increased benefits.

TL-007500.44

## ADDITIONAL BENEFITS

### Rehabilitation During a Period of Disability

If the Insurance Company determines that a Disabled Employee is a suitable candidate for rehabilitation, the Insurance Company may require the Employee to participate in a Rehabilitation Plan and assessment at our expense. The Insurance Company has the sole discretion to approve the Employee's participation in a Rehabilitation Plan and to approve a program as a Rehabilitation Plan. The Insurance Company will work with the Employee, the Employer and the Employee's Physician and others, as appropriate, to perform the assessment, develop a Rehabilitation Plan, and discuss return to work opportunities..

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

If an Employee fails to fully cooperate in all required phases of the Rehabilitation Plan and assessment without Good Cause, no Disability Benefits will be paid, and insurance will end.

TL-007501.00

### Survivor Benefit

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death.

TL-005107

## TERMINATION OF DISABILITY BENEFITS

Benefits will end on the earliest of the following dates:

1. the date the Employee earns from any occupation, more than the percentage of Indexed Earnings set forth in the definition of Disability applicable to him or her at that time;
2. the date the Insurance Company determines he or she is not Disabled;
3. the end of the Maximum Benefit Period;

11

4.  the date the Employee dies;
5.  the date the Employee refuses, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan and assessment;
6.  the date the Employee is no longer receiving Appropriate Care;
7.  the date the Employee fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

Benefits may be resumed if the Employee begins to cooperate fully in the Rehabilitation Plan within 30 days of the date benefits terminated.

TL-007502.00

## EXCLUSIONS

The Insurance Company will not pay any Disability Benefits for a Disability that results, directly or indirectly, from:
1.  suicide, attempted suicide, or self-inflicted injury while sane or insane.
2.  war or any act of war, whether or not declared.
3.  active participation in a riot.
4.  commission of a felony.
5.  the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

In addition, the Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee is incarcerated in a penal or corrections institution.

TL-007503.00

## CLAIM PROVISIONS

**Notice of Claim**
Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

**Claim Forms**
When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

12

## Insurance Data

The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

## Proof of Loss

Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

## Time of Payment

Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

## To Whom Payable

Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company may, at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

## Physical Examination and Autopsy

The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

## Legal Actions

No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Insured will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724a (TX)

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 36 months after the Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guarantee, if any of the following events take place.

1.     The Policy terms change.
2.     A division, subsidiary, eligible company, or class is added or deleted.
3.     There is a change of more than 10% in the number of Insureds.
4.     Federal or state laws or regulation affecting benefit obligations change.
5.     Other changes occur in the nature of the risk that would affect the Insurance Company's original risk assessment.
6.     The Insurance Company determines the Employer fails to furnish necessary information.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Notice Of Cancellation**
The Employer or the Insurance Company may cancel the policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

14

**Policy Grace Period**
A Policy Grace Period of 31 days will be granted for the payment of the required premiums under this Policy. This Policy will be in force during the Policy Grace Period. The Employer is liable to the Insurance Company for any unpaid premium for the time this Policy was in force.

**Reinstatement of Insurance**
An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence.

An Employee's insurance may be reinstated only if reinstatement occurs within 12 weeks from the date insurance ends due to an Employer approved unpaid leave of absence or must be returning from military service pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). For insurance to be reinstated the following conditions must be met.
1.      An Employee must be in a Class of Eligible Employees.
2.      The required premium must be paid.
3.      A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation (if any) before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720 as modified by TL-009960

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement is signed by and has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, the validity of an Insured's coverage will not be contested using such statements.

**Misstatement of Age**
If an Insured's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.

**Certificates**

An individual certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**

The Insurance Company will not be affected by the assignment of an Insured's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**

A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**

The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726a (TX)

**Certain Internal Revenue Code (IRC) & Internal Revenue Service (IRS) Functions**

The Insurer may agree with the Policyholder to perform certain functions required by the Internal Revenue Code and IRS regulations. Such functions may include the preparation and filing of wage and tax statements (Form W-2) for disability benefit payments made under this Policy. In consideration of the payment of premiums by the Policyholder, the Insurer waives the right to transfer liability with respect to the employer taxes imposed on the Insurer by IRS Regulation 32.1(e)(1) for monthly Disability payments made under this Policy. Employee money may not be used to fund the Premium for the services and payments of this section.

TL-009230.00

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**

An Employee is in Active Service on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.  The Employee is performing his or her regular occupation for the Employer on a full-time basis. He or she must be working at one of the Employer's usual places of business or at some location to which the employer's business requires an Employee to travel.
2.  The day is a scheduled holiday or vacation day and the Employee was performing his or her regular occupation on the preceding scheduled work day.

An Employee is in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Appropriate Care**
Appropriate Care means the Employee:
1.    Has received treatment, care and advice from a Physician who is qualified and experienced in the diagnosis and treatment of the conditions causing Disability. If the condition is of a nature or severity that it is customarily treated by a recognized medical specialty, the Physician is a practitioner in that specialty.
2.    Continues to receive such treatment, care or advice as often as is required for treatment of the conditions causing Disability.
3.    Adheres to the treatment plan prescribed by the Physician, including the taking of medications.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Disability Earnings**
Any wage or salary for any work performed for any employer during the Employee's Disability, including commissions, bonus, overtime pay or other extra compensation.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Good Cause**
A medical reason preventing participation in the Rehabilitation Plan. Satisfactory proof of Good Cause must be provided to the Insurance Company.

**Indexed Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.    10% of the Employee's Indexed Earnings during the preceding year of Disability; or
2.    the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

**Insurability Requirement**
An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

17

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Insured**
A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date. A Prior Plan will include the plan of a company in effect on the day prior to that company's addition to this Policy after the Policy Effective Date.

**Regular Occupation**
The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

**Rehabilitation Plan**
A written plan designed to enable the Employee to return to work. The Rehabilitation Plan will consist of one or more of the following phases:
1.      rehabilitation, under which the Insurance Company may provide, arrange or authorize educational, vocational or physical rehabilitation or other appropriate services;
2.      work, which may include modified work and work on a part-time basis.

**Sickness**
Any physical or mental illness.

TL-007500.44 as modified by TL-009980 as modified by TL-009980

## LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Insurance Company)

### AMENDATORY RIDER

### CLAIM PROCEDURES APPLICABLE TO PLANS SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA")

The provisions below amend the Policy to which they are attached. They apply to all claims for benefits under the Policy. They supplement other provisions of the Policy relating to claims for benefits, but nothing contained in the rider will alter or affect the insurance company's duty to comply with any applicable state law or regulation which requires any action to be taken with respect to any claim within any specific period of time.

This Policy has been issued in conjunction with an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). This Policy is a Plan document within the meaning of ERISA. As respects the Insurance Company, it is the sole contract under which benefits are payable by the Insurance Company. Except for this, it shall not be deemed to affect or supersede other Plan documents.

The Plan Administrator has appointed the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims.

**Review of Claims for Benefits**

The Insurance Company has 45 days from the date it receives a claim for disability benefits, or 90 days from the date it receives a claim for any other benefit, to determine whether or not benefits are payable in accordance with the terms of the Policy. The Insurance Company may require more time to review the claim if necessary due to matters beyond its control. If this should happen, the Insurance Company must provide notice in writing that its review period has been extended for:
  (i)     up to two more 30 day periods (in the case of a claim for disability benefits); or
  (ii)    90 days more (in the case of any other benefit).
If this extension is made because additional information must be furnished, these extension periods will begin when the additional information is received. The requested information must be furnished within 45 days.

During the review period, the Insurance Company may require:
  (i)     a medical examination of the Insured, at its own expense; or
  (ii)    additional information regarding the claim.
If a medical examination is required, the Insurance Company will notify the Insured of the date and time of the examination and the physician's name and location. If additional information is required, the Insurance Company must notify the claimant, in writing, stating what information is needed and why it is needed.

If the claim is approved, the Insurance Company will pay the appropriate benefit.

If the claim is denied, in whole or in part, the Insurance Company will provide written notice within the review period. The Insurance Company's written notice will include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) on which the denial was based.
3.    Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

19

4.  In the case of any claim for a disability benefit: identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.

5.  A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, there is the right to appeal the decision. A written request for appeal must be made to the Insurance Company within 60 days (180 days in the case of any claim for disability benefits) from the date the denial was received. If a request is not made within that time, the right to appeal will have been waived.

Once a request has been received by the Insurance Company, a prompt and complete review of the claim will take place. This review will give no deference to the original claim decision. It will not be made by the person who made the initial claim decision, or a subordinate of that person. During the review, the claimant (or the claimant's duly authorized representative) has the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. Any medical or vocational experts consulted by the Insurance Company will be identified. Issues and comments that might affect the outcome of the review may also be submitted.

The Insurance Company has 60 days (45 days, in the case of any disability benefit) from the date it receives a request to review the claim and provide its decision. Under special circumstances, the Insurance Company may require more time to review the claim. If this should happen, the Insurance Company must provide notice, in writing, that its review period has been extended for an additional 60 days (45 days in the case of any disability benefit). Once its review is complete, the Insurance Company must state, in writing, the results of the review and indicate the Plan provisions upon which it based its decision.

Matthew G. Manders, President

TL-009000-1

## IMPORTANT CHANGES FOR STATE REQUIREMENTS

If an Employee resides in one of the following states, the provisions of the certificate are modified for residents of the following states.  The modifications listed apply only to residents of that state.

**Louisiana residents:**
The percentage of Indexed Earnings, if any, that qualifies an insured to meet the definition of Disability/Disabled may not be less than 80%.

**Minnesota residents:**
The Pre-existing Condition Limitation, if any, may not be longer than 24 months from the insured's most recent effective date of insurance.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, Weatherford International, Inc., whose main office address is Houston, TX, hereby approve and accept the terms of Group Policy Number LK-980155 issued by the LIFE INSURANCE COMPANY OF NORTH AMERICA.

This form is to be signed in duplicate.  One part is to be retained by Weatherford International, Inc.; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

Weatherford International, Inc.

Signature and Title: _____  Date: _____

(This Copy Is To Be Returned To LIFE INSURANCE COMPANY OF NORTH AMERICA)

--------------------------------------------------------------------------------

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, Weatherford International, Inc., whose main office address is Houston, TX, hereby approve and accept the terms of Group Policy Number LK-980155 issued by the LIFE INSURANCE COMPANY OF NORTH AMERICA.

This form is to be signed in duplicate.  One part is to be retained by Weatherford International, Inc.; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

Weatherford International, Inc.

Signature and Title: _____  Date: _____

(This Copy Is To Be Retained By Weatherford International, Inc.)

**IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY ASSOCIATION**
*(For insurers declared insolvent or impaired on or after September 1, 2005)*

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect Texas policyholders if their life or health insurance company fails. Only the policyholders of insurance companies which are members of the Association are eligible for this protection which is subject to the terms, limitations, and conditions of the Association law. (The law is found in the *Texas Insurance Code,* Chapter 463.)

**It is possible that the Association may not cover your policy in full or in part due to statutory limitations.**

### ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION

When a member insurance company is found to be insolvent and placed under an order of liquidation by a court or designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:
- Residents of Texas at that time **(irrespective of the policyholder's residency at policy issue)**
- Residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company domiciled in Texas;
  2) The policyholder's state of residence has a similar guaranty association; and
  3) The policyholder is *not eligible* for coverage by the guaranty association of the policyholder's state of residence.

### LIMITS OF PROTECTION BY THE ASSOCIATION

**Accident, Accident and Health, or Health Insurance:**
- For each individual covered under one or more policies:  up to a total of $500,000 for basic hospital, medical-surgical, and major medical insurance, $300,000 for disability or long term care insurance, and $200,000 for other types of health insurance.

**Life Insurance:**
- Net cash surrender value or net cash withdrawal value up to a total of $100,000 under one or more policies on any one life; or
- Death benefits up to a total of $300,000 under one or more policies on any one life; or
- Total benefits up to a total of $5,000,000 to any owner of multiple non-group life policies.

**Individual Annuities:**
- Present value of benefits up to a total of $100,000 under one or more contracts on any one life.

**Group Annuities:**
- Present value of allocated benefits up to a total of $100,000 on any one life; or
- Present value of unallocated benefits up to a total of $5,000,000 for one contractholder regardless of the number of contracts.

**Aggregate Limit:**
- $300,000 on any one life with the exception of the $500,000 health insurance limit, the $5,000,000 multiple owner life insurance limit, and the $5,000,000 unallocated group annuity limit.

**Insurance companies and agents are prohibited by law from using the existence of the Association for the purpose of sales, solicitation, or inducement to purchase any form of insurance.  When you are selecting an insurance company, you should not rely on Association coverage.**

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
6504 Bridge Point Parkway, Suite 450
Austin, Texas 78730
800-982-6362 or www.txlifega.org

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439 or www.tdi.state.tx.us

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Special Marketing Division's toll-free telephone number for information or to make a complaint at:

**1-800-441-1832**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149091
Austin, TX 78714-9104
FAX # (512) 475-1771

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached document.

TL-004426

AVISO IMPORTANTE

Para solicitar información o presentar una queja:

Llame a la línea gratuita de la División Especial de Marketing para obtener información o presentar una queja al:

**1-800-441-1832**

Puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas llamando al:

**1-800-252-3439**

También puede escribir al Texas Department of Insurance (Departamento de Seguros de Texas)
P.O. Box 149091
Austin, TX 78714-9104
FAX # (512) 475-1771

CONFLICTOS POR PRIMAS O RECLAMACIONES: En caso de tener un conflicto relacionado con su prima o una reclamación, debe comunicarse primero con el agente o la compañía. Si el conflicto no se resuelve, usted puede comunicarse con el Departamento de Seguros de Texas.

UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

*2CIGNA Group Insurance*
*CIGNA Group Insurance*
D212
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611
Fax: 866-731-3238
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK #138
ROCK SPRINGS, WY 82901

December 5, 2011

| | |
|---|---|
| Name: | BRIAN GARDUNO |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL INCORPORATED |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. GARDUNO,

Your application for Long Term Disability (LTD) benefits has been received. We will do everything possible to assist you with the claim process. We are in need of some additional information to make a determination.

We must obtain eligibility information from your employer and your physician's treatment plan, as well as medical information regarding your diagnosis and functional abilities.

We also ask that you please forward the following:
-- Enclosed Disability Questionnaire and Activities of Daily Living form, to be completed and signed by you
-- Valid proof of your age, such as a copy of your Driver's License or Birth Certificate
-- Enclosed Reimbursement Agreement, signed by you.

We are contacting DR HUNTSMAN, ST MARKS HOSPITAL to obtain the information necessary to continue the evaluation of your claim. Under your employer's disability contract, you are responsible for ensuring we receive the requested information within 45 days of the request. While we will make efforts to obtain this information, you can help by encouraging those we have contacted to cooperate and respond to us quickly.

If we do not receive the requested information necessary for this review by January 24, 2012, it may result in an extension of the time period required to make a decision, or our decision may be based on the available information on file. We will contact you in 30 days, and every 30 days thereafter, to update you on the status of our evaluation, and will notify you once a determination is made.

You may be contacted by one of our Nurse Case Managers or Vocational Rehabilitation Counselors during the course of your claim. Please cooperate with these individuals if you are contacted. To keep us up to date on your condition, we ask that you call us after each of your doctor's visits, and notify us immediately if you are released to return to work or if you physically return to work.

These benefits are reduced by Other Income Benefits as well as any applicable taxes. Covered Earnings and Other Income Benefits are defined by your contract.

Other Income Benefits may include, but are not limited to: Social Security Disability or Retirement, Workers'

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, Inc. Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provi[de] insurance company subsidiaries and not by CIGNA Corporation.



December 5, 2011
Page 2

Compensation, No-Fault insurance, State Disability benefits, pension, Veterans' benefits or any other disability payments from another group insurance policy. Please notify us immediately if you begin to receive any other sources of income.

We would like to provide you with some information about Social Security benefits and their impact on your Long Term Disability claim, if it is determined to be payable.

As indicated above, the Long Term Disability (LTD) benefits provided by the contract are reduced by any other benefits you and your dependents receive (if applicable under your contract), including Social Security Benefits. The contract allows us to estimate the amount of Social Security benefits you and your dependents would be entitled to receive and to reduce your Long Term Disability benefits accordingly.

However, to avoid financial hardship, we will agree not to deduct an estimated Social Security benefit prior to your receipt of a Social Security Award if you:

-- Sign and return the enclosed Reimbursement Agreement (indicated above). This Agreement will agree to reimburse Life Insurance Company of North America for any Long Term Disability benefits overpaid.
-- Apply for Social Security Disability benefits. In most instances, a member of our Social Security assistance program will be able to assist you in your pursuit of Social Security Disability benefits at no cost to you. If you are contacted by a team member, please cooperate. Please see the enclosed document that outlines the advantages of attaining a Social Security Disability Award.
-- Send a copy of your receipt of application for Social Security Disability. If you have already applied for Social Security, please send us a copy of any correspondence you receive from the Social Security Administration, including any approval or denial notices. This will help to keep our file up-to-date with regard to your Social Security claim.

Through CIGNA's Healthy Rewards Program, you and your family members have access to up to a 60% discount on health and wellness products and services, including weight loss, tobacco cessation, fitness, massage, chiropractic, vision and dental care, and more. Visit cigna.com/rewards (password: savings) to access CIGNA's Healthy Rewards® program.

You also have access to a free online Legal Resource Center, where you can create your own legal documents (such as a will or power of attorney) and use identity theft information kits and estate planning resources. Visit CIGNAWillCenter.com today. Your registration code is your date of birth (DOB) plus the last four digits of your Social Security number (SSN). For example, if your DOB is 02/29/1967 and the last 4 digits of your SSN are 1234, your registration code is 022919671234.

It is our goal to return all incoming calls and thoroughly answer your questions the same day or within 24 hours, at the very latest. CIGNA Group Insurance is committed to providing the highest level of customer service and appreciates any feedback or comments you would like to make regarding the service provided to you. From time to time in the future we will be contacting you to obtain updates on your condition, return to work plans and to discuss any additional assistance that we can provide you with.

Please contact our office at 800-352-0611 should you have any questions.

Sincerely,

*2CIGNA Group Insurance*

2CIGNA Group Insurance

Enclosure(s)



*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 4580
Fax: 866-960-7586
www.mycigna.com

**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK ST #138
ROCK SPRINGS, WY 82901

January 26, 2012

Name:
Incident Number:
Plan/Policy Number:
Plan/Policy Holder:
Underwriting Company:

BRIAN GARDUNO
2527371
LK0980155
WEATHERFORD INTERNATIONAL INCORPORATED
Life Insurance Company of North America

DEAR MR. GARDUNO,

This letter is about your Long Term Disability (LTD) claim. We have separated this letter into subject headings for your ease of reference.

<u>Will You Receive/Continue to Receive Disability Benefits?</u>

After completing our review of your claim, we are unable to approve your claim for benefits.

<u>What Provisions of the Disability Policy Apply to the Decision on Your Claim?</u>

According to your Employer's Policy:

*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform the material duties of his or her Regular Occupation; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*
*2. unable to earn 60% or more of his or her Indexed Earnings.*

*The Insurance Company will require proof of earnings and continued Disability."*

You contract also states:

*"The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.*

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by



January 26, 2012
Page 2

*A period of Disability is not continuous if separate periods of Disability result from unrelated causes.*

*Elimination period*                              *180 days"*

## What Information Was Reviewed?

We recently completed a review of the information on file. When reviewing your claim for disability benefits, all information on file was considered. This included, but was not limited to the following:

--Medical records for the period of June 3, 2011 to August 4, 2011 from Dr. Huntsman
--Medical records for the period of September 12, 2011 to November 11, 2011 from Dr. Dahle
--Medical Request Form and Physical Ability Assessment form completed by Dr. Huntsman on December 29, 2011

## Who Reviewed Your Claim?

LTD Claim Manager
LTD Senior Claim Manager
Nurse Case Manager

## How Was the Claim Decision Reached?

On June 6, 2011, you were seen by Dr. Huntsman with complaints of progressively increasing pain in your back and buttocks. An X-ray was completed and reviewed on this visit that showed screws were loose at the sacrum interface. Dr. Huntsman noted that you wished to proceed with surgery.

On June 13, 2011, you were seen by Dr. Huntsman for a pre-operative evaluation. It was documented that you were scheduled to under go a hardware removal at L4-S1 on June 15, 2011.

On June 27, 2011, you were seen by Dr. Huntsman for a post-operative evaluation. It was documented that you reported no leg pain for a few days, however your right hip was in pain. Dr. Huntsman noted no complication with surgery and you were to continue narcotics and follow up as needed. You were recommended for a referral to a pain clinic.

On August 4, 2011, you were seen by Dr. Huntsman. On this visit you stated you had trouble sleeping. Dr. Huntsman recommended a zero gravity bed. It was documented that you were to begin your visits at the pain clinic. It was noted that you were obtaining Oxycontin 40 mg TID from Dr. Sanders and from other providers. Dr. Huntsman recommended you obtain all your narcotics from the pain clinic. On this visit, you had complaints of low back pain and weakness in your right leg. Upon physical exam, Dr. Huntsman documented that your muscle strength was 5/5 in your lower extremities. An X-ray showed a well-fused spine at L4-S1. Dr. Huntsman recommended you to follow up on an as-needed basis. Dr. Huntsman also noted that you were released to return to work as of September 15, 2011 with restriction of no lifting over 40 pounds, bend and twist to the point of pain only.

On September 12, 2011, you were seen by Dr. Dahle for an evaluation. On this visit you had complaints of pain that is described as aching, shooting, stabbing, cramping, and exhausting sensations. You had complaints of pain when walking, bending, sitting, and sleeping poorly at night. You also had complaints of severe right hip pain, with pain radiating down your leg. Upon physical examination, Dr. Dahle documented 4+/5 strength in your bilateral lower extremities. Dr. Dahle also noted 5/5 strength in all four extremities and positive straight leg raise in the right. Dr. Dahle recommended you continue with your narcotics.

On November 11, 2011, you were seen by Dr. Dahle. Upon physical exam, Dr. Dahle noted that you were walking with a limp, had bilateral SI joint tenderness, with muscle spasms. Dr. Dahle also mentioned an MRI that was reviewed noting mild central spinal stenosis at L3-L4 with postoperative changes at L4, L5 and S1. The MRI also was noted to have shown some posterior paraspinous soft tissue fluid collection. Dr. Dahl noted that this fluid collection was not under tension and did not compress the thecal sac. A copy of this MRI was not available for review.

A Medical Request Form was completed and returned by Dr. Huntsman. On this form, Dr. Huntsman documented that you were released to return to work as of September 15, 2011 with restrictions of no lifting over 40 pounds, bending,

twisting, pushing, and pulling to the point of pain only.

In order to understand your condition and how they may impact your ability to work, we referred your claim to our Nurse Case Manager for review. Based on the review, the medical information currently on file is insufficient to support functional deficits that would preclude work capacity as of your last day worked, continuously throughout the entire 180 day Elimination Period, and beyond. The medical information currently on file does not provide detail regarding your functional impairment in terms of functional loss or support your inability to return to your occupation as an Operations Supervisor. There were no current range of motions or abnormal strength values documented. On your August 4, 2011 office visit with Dr. Huntsman, it was documented that he discharged you from his care and you were to be seen on an as needed basis. Furthermore, Dr. Huntsman effectively released you to return to work with restriction of no lifting over 40 pounds, bending, twisting, pushing, pulling to point of pain only on September 15, 2011. Additional notes from your neurosurgeon after August 4, 2011 were not available for review. Dr. Dahl did not provide detail regarding the extent of your impairment in terms of functional loss such as abnormal range of motion measurements, functional testing, decreased muscle strength, i.e. inclinometry, goniometry, or manual muscle testing. Per the Dictionary of Occupation Titles, your job requirements are classified at a light physical demand level in the national economy. Based on the DOT, your job requirements include lifting, carrying, pushing, pulling up to 20 pounds occasionally, and lifting, carrying, pushing, pulling up to 10 pounds frequently. As such, per the restrictions provided by Dr. Huntsman, you are able to meet the level of activity required at your occupation as an Operations Supervisor. Without medically supported restrictions and limitation that would preclude you from returning to work throughout the entire 180 day elimination period and beyond, your claim has been closed and no benefits are payable.

## What If You Don't Agree With The Claim Decision?

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA). ERISA requires that you go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination.

Here's how to submit your administrative appeal review request:

-- Submit your appeal letter to us within 180 days of your receipt of this letter.
-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.
-- Your appeal letter may include written comments as well as any new information you may have.
-- You may also submit additional information. Additional information may include, but is not limited to: medical records from your doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of June 6, 2011 through present.

You may also wish to have your doctor(s) provide some or all of the following:
--Copies of any other current diagnostic test results (FM report, electromyogram, Nerve conduction velocity (NCV), Range of Motions, etc.) that document a sufficient degree of severity in your condition to render you unable to perform the material duties of your regular occupation. In the absence of this documentation, we shall assume any such reports revealed normal findings and unimpaired function.
--Copies of treatment notes, office notes, physical therapy notes and/or consultation reports for the period of June 6, 2011, through the present that we may not have on file.
--Functional Capacity Evaluation.
--A discussion by your treating physician(s) of the medical evidence pointing to a condition that prevents you from performing the material duties of your own occupation. What are the current data sources used to make this determination?
--A discussion by your treating physician(s) describing your current and future treatment plan(s). What are the problems of treatment? What are the treatment goals (clinical and measurable)? What are the treatment strategies for each goal? How does the treatment plan address your return to work?

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

January 26, 2012
Page 4

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please contact our office at 800-352-0611 ext. 4580 should you have any questions.

Sincerely,

*Louise Ma*

Louise Ma
Disability Claim Manager



DAVID A. HAMPTON

(307) 382-6443
Fax: (307) 382-7866

hnlaw@hamptonnewmanlaw.com

MICHAEL D. NEWMAN

118 3rd Street
P.O. Box 1000
Rock Springs, WY 82902

April 20, 2012

Louise Ma
Disabilities Claims Manager
Cigna Group Insurance
PO Box 70901
Dallas TX 75370-9015

Via Fax – (866) 960-7586
Total Pages - 2

### VIA CERTIFIED MAIL 7010 1060 0001 3720 5243

Ref:  Brian Garduno
   Incident No.:            2527371
   Plan/Policy No.:         LK0980155
   Plan/Policy Owner:       Weatherford International Inc.
   Underwriting Company:    Life Insurance Company of North America

Dear Ms. Ma:

Please be advised that this firm represents Mr. Brian Garduno with respect to issues that have arisen regarding your January 26, 2012 correspondence denying approval of his claim for long term disability benefits.

By this correspondence, we are formally objecting to your decision and requesting an administrative appeal as set forth in your January 26, 2012 correspondence. By this correspondence we are requesting a complete copy of the applicable disability plan document in this matter to be provided within 30 days of this correspondence. We are also requesting copies of all documents relied upon in your decision not to award long term disability benefits in this matter.

Mr. Garduno does not believe the basis for your decision is accurate. He disagrees with your interpretation of the medical records and the context in which you applied them to the determination that he is able to perform the material duties of his occupation. Mr. Garduno believes that you have misconstrued Dr. Huntsmen's records and opinions.



Specifically, we believe that Mr. Garduno is unable and is prevented by his lumbar spine injury from performing the material duties of his occupation and is eligible for long term disability benefits.

We will be providing additional information concerning Mr. Garduno's condition from his treating health care providers in the near future. We would ask that you would review this information. We are convinced that after review of Dr. Huntsman's explanation of Mr. Garduno's current condition as well as his review of your interpretation of his notes will show that you were incorrect in making your decision in this matter.

If you have any questions, or would like to discuss this matter further, do not hesitate to contact me at my office. I look forward to the timely receipt of the documents requested herein.

Sincerely yours,

Michael D. Newman

MDN:jo
cc:    Brian Garduno

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 5 75 |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5 75 |

Postmark Here

4.20.12

Sent To: Cigna Group Insurance
Street, Apt. No.; or PO Box No. PO Box 70901
City, State, ZIP+4 Dallas TX 75370

7010 1060 0001 3720 5243

PS Form 3800, August 2006

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LOUISE NA
CIGNA GROUP INSURANCE
PO BOX 70901
DALLAS TX 75370-9015

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                 4.23.12

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   BRIAN GARDUM
(Transfer from service label)
7010 1060 0001 3720 5243

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

APR 27 2012

*Cedella R*
**CIGNA Group Insurance**
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 4827
Fax: 866-945-4616

www.mycigna.com

**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK ST #138
ROCK SPRINGS, WY 82901

March 12, 2014

| | |
|---|---|
| Name: | BRIAN GARDUNO |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL LLC |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. GARDUNO,

This letter is in reference to your appeal for Long Term Disability benefits under policy number LK0980155.

Based on the independent review of the adverse claim determination, including information submitted in support of the appeal, a determination has been made that the prior decision should be overturned. This means that you are entitled to benefits payable under the above policy so long as you continue to meet the terms and conditions of the policy.

Your claim is being referred to the following claim management team for processing and payment of any due benefits. You should hear from a representative of this team within 10 days:

Stacy Wright Withaker
972.863.4393

Please contact our office at 800-352-0611 ext. 4827 should you have any questions.

Sincerely,

*Cedella R*

Cedella R
Senior Appeal Specialist

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, Incl
Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provid
insurance company subsidiaries and not by CIGNA Corporation.

5

P. 1

¤ ¤ ¤ Communication Result Report ( Apr. 20. 2012 11:46AM ) ¤ ¤ ¤

1)
2)

Date/Time: Apr. 20. 2012 11:45AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 9052 | Memory TX | 18669607586 | P. 2 | OK | |

--------------------------------------------------------------------------------
Reason for error
E. 1) Hang up or line fail                E. 2) Busy
E. 3) No answer                           E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size



DAVID A. HAMPTON          **HAMPTON &**          MICHAEL D. NEWMAN

(307) 382-6643                                                    118 3rd Street
Fax: (307) 382-7866          **NEWMAN**          P.O. Box 1900
                              ATTORNEYS          Rock Springs, WY 82902
hnlaw@hamptonnewmanlaw.com          AT LAW
                              L.C.

April 20, 2012

Louise Ma                    Via Fax – (866) 960-7586
Disabilities Claims Manager  Total Pages – 2
Cigna Group Insurance
PO Box 70901
Dallas TX 75370-9015

VIA CERTIFIED MAIL 7010 1060 0001 3720 5243

Ref:    Brian Garduno
        Incident No.:               2527371
        Plan/Policy No.:            LK0980155
        Plan/Policy Owner:          Weatherford International Inc.
        Underwriting Company:       Life Insurance Company of North America

Dear Ms. Ma:

Please be advised that this firm represents Mr. Brian Garduno with respect to issues
that have arisen regarding your January 26, 2012 correspondence denying approval of
his claim for long term disability benefits.

By this correspondence, we are formally objecting to your decision and requesting an
administrative appeal as set forth in your January 26, 2012 correspondence. By this
correspondence we are requesting a complete copy of the applicable disability plan
document in this matter to be provided within 30 days of this correspondence. We are
also requesting copies of all documents relied upon in your decision not to award long
term disability benefits in this matter.

Mr. Garduno does not believe the basis for your decision is accurate. He disagrees with
your interpretation of the medical records and the context in which you applied them to
the determination that he is able to perform the material duties of his occupation. Mr.
Garduno believes that you have misconstrued Dr. Huntsmen's records and opinions.

*Jacqueline M.*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 8635631
Fax: 866-960-7586
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK ST #138
ROCK SPRINGS, WY 82901

March 24, 2014

| | |
|---|---|
| Name: | BRIAN GARDUNO |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL LLC |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. GARDUNO,

This letter is regarding your Long Term Disability (LTD) claim. We have completed our review and determined that as of December 3, 2013 you no longer remain disabled as defined by your policy.  As you are aware, under the terms of the policy, Disability is defined as:

According to your Employer's disability plan:

*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform the material duties of his or her Regular Occupation; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, training, or experience; and*
*2. unable to earn 60% or more of his or her Indexed Earnings.*

*The Insurance Company will require proof of earnings and continued Disability."*

Our review of the information on file specifically included:
-- Disability Questionnaire completed by you on December 17, 2011
-- Peer Review Report completed by Dr. Jamie L. Lewis on January 21, 2014

Based on the above information, it was determined that you are capable of working 8 hours a day and 40 hours a week from 6/6/11-6/14/11, 8/1/11-5/14/12, and 8/18/12 forward with the following restrictions:

--Lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently.
--Limited to walking and standing 30 minutes continuously and 5 hours cumulatively
--Occasional: bending, twisting, squatting, kneeling, overhead reaching and reaching below the waist
--No restrictions regarding reaching at the wait level or sitting

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by Insurance company subsidiaries of CIGNA Corporation, including Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by Insurance company subsidiaries and not by CIGNA Corporation.



March 24, 2014
Page 2

--Avoid climbing ladders

We then referred your claim to our vocational department for review for a Transferable Skills Analysis (TSA). They considered your work capacity, restrictions and limitations, along with your education and employment history, to determine occupations that you would be able to perform based on your current work experience. A TSA compiles information on restrictions, limitations, education level, prior work history, and prior training to determine what occupations, if any, you are capable of performing. In order to verify your education level, work history and training, we utilized Disability Questionnaires you completed on December 17, 2011. The vocational department considered your work capacity, restrictions and limitations, along with your education and employment history, to determine occupations that you would be able to perform based on your current work experience. The completed TSA identified several occupations that were within your skills, work history and wage requirement/station in life. These occupations were found to fit the given restrictions and limitations by Dr. Jamie L. Lewis giving you reasonable functionality in which to perform the found occupations. The most appropriate wage source was utilized for occupations using the most up to date source available

This review confirmed that you would be able to perform the following occupations:
[list out alternate occupations that meet the indexed covered earnings wage threshold and all other policy requirements for AnyOcc:]

-- Director, Service  189.167-014
-- District Supervisor, Mud-Analysis Well Logging  010.167-014
-- Superintendent, Drilling and Production  181.167-014

The above identified occupations are compatible with your work capacity. Additionally, all of the jobs listed above satisfy the earnings requirement for your Indexed Covered Earnings under the contract. These occupations can be found in The Dictionary of Occupational Titles, as published by the U.S. Department of Labor. Your wage requirement is $5,037.60 per month, which is $60,451.20 per year. The salaries for the above occupations meet this requirement, as the salaries range from $61,220.00 to $79,710.00.

As of December 3, 2013, you no longer meet the definition of Disability stated above and your claim has been closed. Payments have been made through December 2, 2013 and no further benefits are due

How Was Your Social Security Award Considered in the Claim Decision?

We are aware that you have been awarded Social Security Disability Insurance (SSDI) benefits by the Social Security Administration (SSA), and have considered that fact in our claim review. The criteria used by the Social Security Administration (SSA) may differ from the requirements of the policy under which you are covered. Under your Employer's LTD policy, consideration is given to your supported restrictions and limitations, along with your work experience, training, and education. Based on this consideration, we have determined that you have transferable skills to other occupations.

What If You Don't Agree With The Claim Decision?

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA). ERISA requires that you go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination.

Here's how to submit your administrative appeal review request:

-- Submit your appeal letter to us within 180 days of your receipt of this letter.
-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.
-- Your appeal letter may include written comments as well as any new information you may have.
-- You may also submit additional information. Additional information may include, but is not limited to: medical records from your doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the

March 24, 2014
Page 3

period of December 3, 2013 through December 3, 2013.

You may also wish to have your doctor(s) provide some or all of the following:

-- Copies of any other diagnostic test results performed on or after December 3, 2013 which document the severity of your condition to the extent that you are unable to perform the duties of any occupation (i.e. MRI and X-Rays).
-- Rehabilitation notes that provide measurable function on and/or beyond December 3, 2013.
-- Functional Capacity Evaluation to clarify your functionality within one month of this letter
-- Specific, documented limitations or restrictions that preclude you from performing the duties of any occupation
-- A discussion by your treating physician(s) of the medical evidence which prevents you from performing the essential duties of any occupation. What are the current data sources used to make these determinations?
-- A discussion by your treating physician(s) describing your current and future treatment plan(s). What are the problems of treatment? What are the treatment goals? What are the treatment strategies for each goal? How does the treatment plan address you returning to work?

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the plan. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

Please be aware that you are entitled to receive, upon request and free of charge, information relevant to your claim for benefits.

Please contact our office at 800-352-0611 ext. 8635631 should you have any questions.

Sincerely,

*Jacqueline M.*

Jacqueline M.
Senior Claim Manager


cc:   MR. MICHAEL NEWMAN, HAMPTON & NEWMAN ATTORNEYS AT LAW

**DAVID A. HAMPTON**

(307) 382-6443
Fax: (307) 382-7866

hnlaw@hamptonnewmanlaw.com

# HAMPTON & NEWMAN

ATTORNEYS
AT LAW
L.C.

**MICHAEL D. NEWMAN**

118 3rd Street
P.O. Box 1000
Rock Springs, WY 82902

April 4, 2014

Jacqueline M.
CIGNA Group Insurance
PO Box 709015
Dallas TX 75370

**CERTIFIED MAIL 7004 2890 0001 1950 6053**
**RETURN RECEIPT REQUESTED**

Name:                        Brian Garduno
Incident Number:             2527371
Plan/Policy Number:          LK0980155
Plant Holder:                Weatherford International
Underwriting Company:        Life Insurance Company of North America

Dear Ms. M.:

Please be advised I am assisting Mr. Brian Garduno with respect to the above
referenced matter.  Please be advised that Mr. Garduno objects to your March 24, 2014
correspondence finding that he no longer remains disabled and is not eligible for Long
Term Disability benefits after December 3, 2013 as defined by your policy.  A copy of
said correspondence is attached hereto.

It is the contention of Mr. Garduno that he remains disabled as defined by the policy
and continues to be eligible for CIGNA Long Term Disability benefits.  I anticipate
providing additional information within the next forty-five (45) days evidencing Mr.
Garduno's continued eligibility for said benefits.

Sincerely yours,

Michael D. Newman

MDN:jo
cc:   Brian Garduno

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7004 2890 0001 1950 6053

Sent To: Jacqueline M / CIGNA
Street, Apt. No.; or PO Box No. PO Box 709015
City, State, ZIP+4 Dallas TX 75370

PS Form 3800, June 2002                See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JACQUELINE M.
CIGNA GROUP INSURANCE
PO BOX 709015
DALLAS TX 75370

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
M EDWARDS     4-8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   BRIAN GARDUNO
(Transfer from service label)     7004 2890 0001 1950 6053

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**DAVID A. HAMPTON**

(307) 382-6443
Fax: (307) 382-7866

hnlaw@hamptonnewmanlaw.com

# HAMPTON &
# NEWMAN
## ATTORNEYS
## AT LAW
### L.C.

**MICHAEL D. NEWMAN**

118 3rd Street
P.O. Box 1000
Rock Springs, WY 82902

September 16, 2015

Jacqueline M.
CIGNA Group Insurance
PO Box 709015
Dallas TX 75370

Via Fax – (866) 960-7586
Total Pages - 17

**CERTIFIED MAIL 7013 2630 0000 7282 9310**
**RETURN RECEIPT REQUESTED**

Name:                          Brian Garduno
Incident Number:               2527371
Plan/Policy Number:            LK0980155
Plant Holder:                  Weatherford International
Underwriting Company:          Life Insurance Company of North America

Dear Ms. M.:

As previously disclosed, I am assisting Mr. Garduno with respect to issues that have arisen regarding CIGNA Group Insurance's denial of his Long-Term Disability benefits after December 3, 2013.

By this correspondence I am requesting that CIGNA Group Insurance review the enclosed report offered by Bruce Y. Newton, MD and reconsider their denial. It is the finding of Dr. Newton that Mr. Garduno is permanently and totally disabled because of his years of dutiful physically demanding service to Weatherford International.

Your prompt response this is correspondence would greatly be appreciated.

Sincerely yours,

Michael D. Newman

MDN:jo
cc:    Brian Garduno

8

**Salt Lake Orthopaedic Clinic**
1160 EAST 3900 SOUTH, SUITE 5000
SALT LAKE CITY, UTAH 84124
TELEPHONE 801-282-8466 / FAX 801-282-9752
www.sloc.org

BRUCE Y. NEWTON, M.D.

August 12, 2015

Michael Newman, Attorney at Law
PO Box 1000
Rock Springs, WY 82902
Fax: 307-382-7866

RE:             GARDUNO, BRIAN
SLOC#:          134198
PHYSICIAN:      Bruce Y. Newton, M.D.

Dear Mr. Newman,

Thank you for the opportunity to offer my opinion regarding Brian Garduno and his work capabilities.

The information contained within this report was obtained through direct interview of the patient followed by a physical examination and review of the provided medical records.

**CHIEF COMPLAINT**
Multiple orthopaedic challenges and multiple medical problems.

**HISTORY AS OBTAINED FROM THE PATIENT**
Brian is a 54-year-old white male who began employment in 1979 for Weatherford, a company that provides oil field servicing. He has worked there in various capacities, all of it physically demanding. He was finally unable to continue employment there for medical reasons in 2011 and was subsequently placed on work-related disability and subsequently Social Security Disability. His Cigna long-term disability was terminated 12-03-13 and that is being appealed.

Brian's orthopaedic issues date back to the 1980s when he began to develop lower back pain. He pursued treatment intermittently for that, but continued to work consistently, rarely taking time off. In the early 1990s, he sustained two crush injuries to his left foot and had four surgeries on his left foot. He required multiple injections postoperatively. These injections were corticosteroid injections. In addition, he was receiving corticosteroid injections for his chronic and progressive lumbar symptoms.

Michael Newman, Attorney at Law
August 12, 2015
Page 2

RE:           GARDUNO, BRIAN
SLOC#:        134198
PHYSICIAN:    Bruce Y. Newton, M.D.

By 2004, Brian developed quite severe right hip pain and was diagnosed with avascular necrosis of the right femoral head and underwent right total hip arthroplasty. The cause of the AVN was felt to potentially be his multiple corticosteroid injections.

Brian quite rapidly returned to work after his hip replacement and continued with lumbar symptoms. Finally, in 2009, his first lumbar surgery was performed. This was an L4 to S1 fusion for spondylolistheses, stenosis, and radiculopathy. He returned to work approximately three months after the fusion, but had ongoing pain. Hardware was removed June of 2011 without significant benefit. Beyond that time, he was unable to return to work because of ongoing pain and dysfunction. By May of 2012, he had developed problems above his L4 to S1 fusion and underwent an X-LIF fusion procedure at the L3-4 level. He is therefore now fused from L3 to the sacrum.

Brian has also developed bilateral shoulder pain and in July of 2012 underwent right rotator cuff repair with what he considers a good result. In May of 2015, he underwent a left rotator cuff repair, which has been very troublesome. He now is left with ongoing left shoulder pain, arthritis, and potential avascular necrosis of the left humeral head.

In addition to the rather serious spinal condition, bilateral shoulder condition, and left foot condition, he also suffers from diffuse osteoarthritis.

Brian believes that a 20-pound lifting restriction was imposed by his spine surgeon. He is not sure if there have been strict restrictions placed in regards to his shoulder and foot pathology.

Brian is also hampered by a plethora of general medical maladies including coronary artery disease, having sustained a myocardial infarction in 2008. He has diabetes mellitus, hypertension, pulmonary fibrosis, and fibromyalgia syndrome. All of these have been concerns as well.

**CURRENT STATUS**
Brian is describing ongoing lower back pain with radiation into both hips and both lower extremities. He has pain and antalgia in his left foot. He has severe pain in the left shoulder, lesser pain in the right shoulder, diffuse hand soreness and pain from osteoarthritis is present. He reports pain that is generally in the 8/10 category, in particular with the lower back and left shoulder. His sleep is affected. He cannot sleep in anything but a recliner. He has a one-hour sitting tolerance. He sleeps three hours at a

Michael Newman, Attorney at Law
August 12, 2015
Page 3

| | |
|---|---|
| RE: | GARDUNO, BRIAN |
| SLOC#: | 134198 |
| PHYSICIAN: | Bruce Y. Newton, M.D. |

time in a recliner before he has to change position. He has a half-mile walking tolerance and about a one-hour standing tolerance.

**PAST MEDICAL HISTORY**
1. Coronary artery disease
2. Diabetes mellitus
3. Hypertension
4. Pulmonary fibrosis
5. Fibromyalgia syndrome
6. Diffuse osteoarthritis and chronic pain

**MEDICATIONS**
1. Plavix
2. Benicar
3. Cardizem
4. Metformin
5. Oxycodone 30 mg three times daily
6. OxyContin 40 mg three times daily

**ALLERGIES**
PREDNISONE.

**REVIEW OF SYSTEMS**
This is outlined in the medical history form in the chart. It is notable for some hearing loss, cardiac stenting, acid reflux, and those issues mentioned above.

**PAST SURGICAL HISTORY**
1. Left foot surgery times-four
2. Right total hip arthroplasty
3. Bilateral rotator cuff repairs
4. Lumbar surgery times-three
5. Jaw pinning
6. Cardiac stent placement

**FAMILY HISTORY**
Notable for some arthritis in his mother. His sister passed away with many of the same symptoms and obstacles.

Michael Newman, Attorney at Law
August 12, 2015
Page 4

RE:              GARDUNO, BRIAN
SLOC#:           134198
PHYSICIAN:       Bruce Y. Newton, M.D.

## SOCIAL HISTORY

He is currently not employed. He is on Social Security Disability. He is married and has three grown children. He tries to walk for exercise, but really can only do a half of a mile at a time. He smokes one-half pack-per-day and is trying to quit. He reports no substance abuse or habituation to his current opiate medications.

## RECREATIONAL ACTIVITIES

He really does not do much at all. He has given up hunting, fishing, and the outdoor things that he has enjoyed doing.

## EDUCATION HISTORY

He attended high school into the tenth grade. He did receive a GED in approximately 1992. He started working full-time, however, at about age 15. He does feel that he has adequate reading and writing skills. He has basic computer skills, but well below the median by his estimation.

## EXAMINATION

General: Brian stands 5'7" weighing 185 pounds. He is cooperative. His affect is blunted, but he is in no overt distress while sitting. As he walks, he walks with an antalgic gait pattern, both on the left and the right, noting right hip pain to account for the right-sided Trendelenburg.

Observation: Observation of the spine reveals a well-healed posterior midline incision with a flat back and some kyphotic angulation. Observation of the extremities reveals multiple scars over the left forefoot. He displays splaying of the toes and fused phalanges. There is thinning of the musculature with some atrophy around the left shoulder girdle, but no distal upper or lower extremity atrophy. Pulses are full and symmetrical. There are no joint effusions or synovitis. There is a well-healed right posterolateral hip incision.

Neurologic exam: Motor testing is 5/5 throughout all four extremities. Sensory examination is intact. Reflexes are 2+ and symmetrical with no hyperreflexia and no Babinski; no clonus. The left shoulder shows pain-limited strength graded 3-/5.

Range of motion: Cervical range of motion is full and painless. Left shoulder range of motion is highly restricted with only 70 degrees of active abduction and 80 degrees of

Michael Newman, Attorney at Law
August 12, 2015
Page 5

RE:            GARDUNO, BRIAN
SLOC#:         134198
PHYSICIAN:     Bruce Y. Newton, M.D.

active forward flexion. There is 70 degrees of external rotation, but only 30 degrees of internal rotation. Right shoulder range of motion is full and primarily painless. Right hip range of motion is full, but there is pain with end of range external rotation and internal rotation. Lumbar range of motion is highly guarded and painful in all planes with only about 30 degrees of forward flexion. He has a fused left forefoot, but ankle range of motion is full and painless bilaterally. Bilateral knee range of motion is full and painless.

Provocative maneuvers: Straight leg raising is negative bilaterally. FABER and Patrick maneuvers cause pain in the right groin and right lateral hip. Impingement findings are notably troublesome in the left shoulder, mildly positive in the right shoulder. There appears to be crepitance with range of the left shoulder as well. Prone hip extension elicits prominent discomfort over the base of the lumbar spine. There is no SI joint pain to provocation.

Palpatory exam: There is notable tenderness to palpation surrounding the left shoulder girdle, particularly over the anterior shoulder joint. There is prominent right greater trochanteric tenderness, prominent tenderness diffusely over the lumbar spinous processes and paraspinal muscles. There is also tenderness to palpation diffusely over the left forefoot.

## REVIEW OF RECORDS

1.     **Salt Lake Orthopaedic Clinic**

   07-16-07   He is seen by Dr. Kade Huntsman. He was a prior patient of Rick Schwartz. He describes flipping a four-wheeler with severe back pain since that time. He was diagnosed with a T12 compression fracture as well as a spondylolisthesis at L4-5. They discuss the possibility of surgical intervention.

   11-09-09   He returns for follow-up. He was seen several years ago and a fusion was recommended. He has severe stenosis and degenerative disc disease and listheses at L4-5 and L5-S1. There is also sensory and motor loss. The plan is to proceed with an L4 to S1 fusion.

   11-14-09   He returns for postoperative follow-up. Everything is on target.

Michael Newman, Attorney at Law
August 12, 2015
Page 6

RE:                    GARDUNO, BRIAN
SLOC#:                 134198
PHYSICIAN:             Bruce Y. Newton, M.D.

01-04-10    He returns for follow-up. He is one month out from the fusion, doing
            well.

02-04-10    He returns for follow-up. He takes OxyContin 20 mg bid. He will
            continue with a bone stimulator.

03-03-10    This is a phone call that he is back working full-time, but he standing
            constantly at work and he is having a lot more pain. He has cramping
            into his legs.

04-08-10    He returns for follow-up, but this time he is doing nicely.

11-11-10    He returns for follow-up. Two months ago, he slid injuring his back
            doing the splits. He is having spasms.

05-24-11    He returns for follow-up. He is continuing to lift more than 30 pounds
            at work on a regular basis. He has left thigh numbness. An MRI is
            ordered.

05-31-11    He returns for follow-up. An MRI shows changes at L3-4, above the
            fusion. There is some lucency around the sacral screws.

06-06-11    There is progressive increasing back and buttock pain. It is felt to be
            hardware failure. The plan is to remove the hardware.

06-27-11    He has had hardware removal. The right hip hurts. This is the one
            that was replaced. The plan is to continue with narcotics.

07-11-11    This is a phone conversation. He is having knee pain. A spinal cord
            stimulator trial is discussed.

09-13-11    This is an assessment from Jeff Jackson for low back and right hip
            pain. He believes that the right hip is normal and that the symptoms
            are coming from his back. He recommends exercise. He has nothing
            surgical to offer him.

Michael Newman, Attorney at Law
August 12, 2015
Page 7

RE:            GARDUNO, BRIAN
SLOC#:        134198
PHYSICIAN:     Bruce Y. Newton, M.D.

04-11-12    He is seen by Jeff Jackson for right shoulder pain. He has had an
            aspirate from his shoulder, showing possible infection, but he is
            clinically consistent with rotator cuff tear.

04-23-12    This is a follow-up with Dr. Huntsman. A new MRI shows severe
            facet arthrosis above his fusion with a grade-I listhesis and moderate
            disc degeneration. The plan is a lateral approach, plating at L3-4.

05-23-12    He comes in with a weeping wound following surgery. He has had an
            X-LIF at L3-4. There is concern for infection. He will see Joel
            Tractenburg.

06-22-12    Follow-up with Jeff Jackson for re-evaluation of the right shoulder.
            The impression is rotator cuff tear, chronic low back and right hip
            pain. The plan is to proceed with surgery.

07-02-12    He is seen by Dr. Huntsman in follow-up. He is recovering from an X-
            LIF. He can come out of the brace.

07-20-12    This is a follow-up of the right shoulder with Dr. Jackson.
            Postoperative pain has been tolerable. He has undergone a rotator
            cuff repair.

08-17-12    This is a follow-up with Dr. Huntsman. Long-term will not be
            approved by the insurance. He is stable status post X-LIF.

08-20-12    This is a follow-up for the right shoulder. He is doing fairly well.

10-18-12    This is a follow-up for his spine with Dr. Huntsman. He has made
            progress with therapy, but he has reached a plateau. He has been off
            work since June 2011 and "we do not hold out any reasonable hope
            that he will be able to return."

10-29-12    He is assessed by Dr. Jackson for left knee pain. He has patellar
            bursitis.

Michael Newman, Attorney at Law
August 12, 2015
Page 8

RE:             GARDUNO, BRIAN
SLOC#:          134198
PHYSICIAN:      Bruce Y. Newton, M.D.

04-13-15    He is seen for left shoulder pain and a painful right hip after
            arthroplasty. He is felt to have a possible rotator cuff tear. He does
            not think the hip implant has failed. He may have a bursitis.

04-22-15    This is a follow-up with Dr. Jackson. An MRI shows rotator cuff tear.
            The plan is to proceed with surgery.

06-01-15    He returns for follow-up postoperatively from his left shoulder
            surgery. Everything is proceeding nicely.

06-29-15    He returns for follow-up. He has been in significant pain. He has a
            difficult time raising his left arm away from his body. The plan is to
            continue with physical therapy.

07-13-15    He returns for follow-up. He is out of his sling. He is having a lot of
            buckling, severe left shoulder pain. He recommends an MRI.

07-20-15    He returns for follow-up. The cuff is intact. There may be an area of
            possible AVN within the humeral head. They will follow it closely and
            he will be seen again in three months.

2.  **Operative Reports – Salt Lake Orthopaedic Clinic**

12-02-09    This is authored by Dr. Huntsman. It is an L4 to S1 fusion for
            spondylolistheses and severe disc degeneration and radiculopathy.

06-15-11    This is another operative report by Dr. Huntsman. It is hardware
            removal of the pedicle screw fixation system from L4 to S1.

05-15-12    This is another operative report by Dr. Huntsman. This is an L3-4 X-
            LIF with peak cage.

07-05-12    This is an operative report by Jeff Jackson. It is a right shoulder
            arthroscopic rotator cuff repair, biceps tenodesis, and subacromial
            decompression.

Michael Newman, Attorney at Law
August 12, 2015
Page 9

RE:                 GARDUNO, BRIAN
SLOC#:           134198
PHYSICIAN:     Bruce Y. Newton, M.D.

05-19-15    This is another operative report by Jeff Jackson. It is a left shoulder
            arthroscopic rotator cuff repair, subacromial decompression, distal
            clavicle excision, and biceps tenodesis.

3.   **Salt Lake Orthopaedic Clinic – Communications**

04-22-13    This is a letter To Whom It May Concern. He states that he has had a
            right shoulder surgery with a good result. He does not recommend
            repetitive lifting from his employment.

4.   **Hunter Family Medical Clinic**

09-27-02 through 04-13-12

            These are routine primary care visits. His diagnoses include anxiety,
            coronary artery disease, insomnia, chronic back pain, joint pain,
            GOUT, hip pain, hypercholesterolemia, and hypertension. He is also
            noted to have kidney dysfunction and elevated LFTs.

01-31-12    This is a letter To Whom It May Concern stating that Mr. Garduno
            has been unable to and continues to be unable to work since June
            2011 due to his medical conditions. This is signed by Mark Sanders,
            P.A.

5.   **Functional Assessment Rehabilitation**

05-30-13    He was observed to be alternating sitting and standing during the
            two-hour assessment. He walks slower than average with a limp. He
            had to take a break because his blood pressure was too high,
            secondary to pain. He was able to carry 25 pounds for 30 feet. It is
            stated that his normal job requirements were to lift at least 50 pounds
            and up to 200-300 pounds. It was felt that he was not capable of
            performing his normal job duties.

Michael Newman, Attorney at Law
August 12, 2015
Page 10

RE:                GARDUNO, BRIAN
SLOC#:             134198
PHYSICIAN:         Bruce Y. Newton, M.D.

6.    **Western Neurological Associates**

03-26-13    This is an MRI of the hip joints. It is limited by the prior prosthesis
            placement. Lumbar pathology is noted.

7.    **Millcreek Imaging**

06-16-09    MRI of the lumbar spine – moderate central and mild bilateral recess
            stenosis at L4-5, central protrusion and spur at L5-S1.

09-12-11    MRI of the lumbar spine – mild stenosis at L3-4 with fusion from L4 to
            S1 with fluid collection with concern for seroma, hematoma, or
            abscess.

09-12-11    Right hip x-rays – unremarkable.

09-12-11    Right knee x-rays – normal.

03-30-12    MRI of the lumbar spine – there is increase in the moderate spinal
            stenosis at L3-4.

8.    **Disability Claim Information**

08-08-11    He is given a 40-pound lifting restriction, bending and twisting to the
            point of pain only.

09-12-11    This is a form filled out. He has been referred to the pain clinic, but
            he needs to be on long-term disability.

9.    **St. Mark's Hospital**

08-01-07    He is discharged from St. Mark's Hospital with multi Lobar
            pneumonia, pleurisy, COPD, T12 fracture, chronic back pain,
            headaches, and restrictive lung disease. He is discharged on oxygen.

11-03-07    MRI of the brain – two to three small nonspecific hyperintensities,
            most likely small vessel disease.

Michael Newman, Attorney at Law
August 12, 2015
Page 11

RE:             GARDUNO, BRIAN
SLOC#:          134198
PHYSICIAN:      Bruce Y. Newton, M.D.

09-18-09   He is seen in the emergency room for right leg pain. A sonogram was
           negative. The impression was acute right-sided lumbar radiculopathy,
           16 days status post fusion.

06-21-11   He is seen in the emergency room for left great toe pain, abrupt in
           onset. He has a history of GOUT. X-rays show surgical fusion of the
           PIP joints of the second and third toes, single fixation screw in the
           proximal phalynx of the first toe. There is no acute fracture. There is
           soft tissue swelling. The impression is acute pain of the left great toe.
           He is given allopurinol and Indocin.

04-08-12   This is an admission to the hospital by Ben Hansen for painful right
           shoulder with suspected right shoulder infection.

04-09-12   MRI of the right shoulder – advanced changes of the supraspinatus
           tendinopathy, areas of partial-thickness articular and bursal surface
           tearing with small focal areas of full-thickness fissuring, high-grade
           partial-thickness articular surface tear involving the infraspinatus.

10.   **High Plains Physical Therapy**

07-30-12   Only one visit for right shoulder rehabilitation was attended.

11.   **Memorial Hospital of Sweetwater County**

06-11-08   He is seen in the emergency room for chest pain.

08-18-08   He is seen in the emergency room for malaise and he is transferred
           to St. Mark's.

08-23-08   He is seen in the emergency room for an acute GOUTY attack in his
           left ankle.

02-08-09   He is seen in the emergency room for right flank pain. This is felt to
           be spinally related.

Michael Newman, Attorney at Law
August 12, 2015
Page 12

RE: GARDUNO, BRIAN
SLOC#: 134198
PHYSICIAN: Bruce Y. Newton, M.D.

03-03-10    He is seen for nausea and right arm pain. This was felt to be
            musculoskeletal pain.

## 12.    Omega Pain Clinic

08-05-11 through 02-21-13

            This is a course of routine follow-up at Life Tree Pain Clinic and
            Omega Pain Clinic. Chronic back pain is the main concern.
            Treatment is really focused on medication management. Urine tox
            screens appear to be appropriate.

03-25-13    This is an assessment by Katie Toledo, R.N. for chronic low back
            pain. The pain is 6-10/10. He sleeps three hours per night. He is on
            oxycodone, OxyContin, Benicar, and Plavix. The diagnoses given are
            right hip pain status post total hip arthroplasty, post laminectomy
            syndrome, long-term medication use. He is warned regarding the
            medication use and he recommends an MRI of the right hip.

## 13.    Premier Bone and Joint

12-14-05    This is an operative report. It is a right total hip arthroplasty for right
            hip avascular necrosis. The surgery is from Jay Carson.

12-18-05    This is a routine follow-up with Dr. Carson. X-rays look good.

01-24-06    He returns for follow-up. He has not been following up with his
            appointments. He is back to work and being able to get around a lot
            better. Some muscles spasms are present.

01-25-06    X-rays show right-sided total hip arthroplasty without complication.

03-16-06    He returns for follow-up. He has been participating in physical
            therapy. He is working 10-12 hours at work.

10-17-06    He is seen 10 months status post right total hip arthroplasty. He has
            some greater trochanteric bursitis. The physician was Jay Carson.

Michael Newman, Attorney at Law
August 12, 2015
Page 13

RE:            GARDUNO, BRIAN
SLOC#:         134198
PHYSICIAN:     Bruce Y. Newton, M.D.


06-12-09    He is seen after injuring his back at work. He fell and was told that he
            had a fractured vertebrae. He has a history of fibromyalgia. It
            appears that he has a T12 compression.

**14.        Jamie Lewis, M.D.**

01-02-14    This is an insurance obtained peer review report. The claimant was
            not examined by Dr. Lewis. It was Dr. Lewis' opinion that he had the
            capacity for working eight hours per day, 40 hours per week, with a
            lifting, pushing, pulling, and carrying restriction of 20 pounds
            occasionally and 10 pounds frequently, and walking and standing 30
            minutes continuously, and five hours cumulatively. He should be
            limited to occasional bending, twisting, squatting, and kneeling. He
            should be restricted to occasional overhead reaching and reaching
            below the waist and unrestricted at the waist level. He should avoid
            climbing ladders. He has no sitting restriction. The determination was
            made that this allowed him to work at a capacity that does not qualify
            him for disability. The criteria outlined for disability was that he was
            unable to perform the material duties of any occupation for which he
            or she is or may reasonably become qualified for, based on
            education, training, or experience and that he would be capable of
            earning at least 60% of his indexed earnings.

**DIAGNOSES**
1. T12 compression fracture.
2. Status post three lumbar surgeries, resulting in L3 to S1 fusion with ongoing pain.
3. Status post right rotator cuff repair.
4. Status post left rotator cuff repair with poor ongoing function.
5. Left humeral avascular necrosis with nonfunctional left shoulder joint.
6. Right hip avascular necrosis status post total hip arthroplasty with ongoing pain.
7. Right greater trochanteric bursitis.
8. Gout.
9. Coronary artery disease.
10. Diabetes mellitus.
11. Hypertension.
12. Restrictive lung disease.

Michael Newman, Attorney at Law
August 12, 2015
Page 14

RE:            GARDUNO, BRIAN
SLOC#:         134198
PHYSICIAN:     Bruce Y. Newton, M.D.

13. Obstructive lung disease.
14. Fibromyalgia syndrome.

## DISABILITY DETERMINATION
It is my opinion that Mr. Garduno qualifies for permanent total disability based upon the outlined criteria by Cigna Insurance. I am strongly supportive of the disability designation in this case. As you know, Mr. Newman, I am a strong advocate of employment and its overall benefits in one's life. I am fully aware of and concerned regarding the negative sequelae of worklessness. I do believe, however, that Mr. Garduno is one of those cases in which disability is appropriate and a classic example of the value and purpose of disability insurance.

Mr. Garduno worked for the same company for 32 years, overcoming notable orthopedic and medical obstacles, showing a determination and resiliency to continue in gainful employment despite the numerous obstacles that he faced. He has now reached a point, however, where he is clearly incapable of performing his normal work duties, but I believe clears the bar for permanent total disability for any occupation for which he has been qualified, or may reasonably be qualified, based upon his education, training, and experience.

Additional new information since Dr. Lewis offered an opinion and since his prior Functional Capacity Evaluation is that he now has a nonfunctional left upper extremity. He has undergone rotator cuff repair and is left with very restricted range of motion, as noted in the physical examination, and the inability to raise his arm with any weight away from his body. He has been diagnosed with likely avascular necrosis of the humeral head. This is a game changer even though I believe, prior to this, he should have qualified for Disability under his Cigna insurance plan.

## RESTRICTIONS/LIMITATIONS
1. No lifting more than 20 pounds with no lifting at all of the left upper extremity.
2. Sitting limitation of one hour continuously and four hours per work day.
3. Standing/walking limitation of 30 minutes continuously and 90 minutes in a work day.
4. As noted above, no lifting away from the body with the left upper extremity. Fine motor skills only with the arm at his side.
5. No ladders or scaffolds.

Michael Newman, Attorney at Law
August 12, 2015
Page 15

RE:            GARDUNO, BRIAN
SLOC#:         134198
PHYSICIAN:     Bruce Y. Newton, M.D.


## DISCUSSION

The following points, I believe, warrant further elaboration. As is obvious, he has been considered disabled by the Social Security Administration which takes into account education, training, and experience. The criteria that I have used to render my opinion of disability could be broken into the following categories:

1. **Notably restricted physical capacity.** His diagnoses have been listed above. He has fairly profound orthopedic obstacles as well as significant medical obstacles, giving him the restrictions and limitations as outlined above. These physical restrictions and limitations would really handcuff a potential employer and make accommodations very difficult. Although some employers may be very accommodating, I believe this is asking too much of an employer.

2. **He has only physically based work experience.** Brian has worked only in a physical capacity. He has been a working supervisor with the emphasis on working. He did work in a more cognitive capacity for a short time in restricted duty, but felt that he was out of place and unproductive in that work environment.

3. **Limited breadth of work experience.** Brian has had essentially one employer his whole life. Granted there have been different owners of the same company, but he really only knows the oil field industry. Although some of these skills may be transferable, I consider this another employment obstacle as we try to consider his employment possibilities.

4. **Limited education.** Brian did not graduate from high school and although he has passable reading and writing skills, his computer skills are substandard and at age 54, the prospect of gaining a significant new cognitive skill set is unlikely.

5. **He possesses no managerial skill set.** Although he has been a working supervisor, through interview it is very clear that he does not possess the tools to step in to a managerial or cognitively based occupational position. I do not mean to disparage Mr. Garduno. He clearly comes over as a worker bee. He is not a great communicator, and does not possess natural leadership abilities, and any type of sedentary occupation opportunity would likely be very low level, which would not meet the criteria of 60% or more of his indexed earnings.

6. **He is on chronic reasonably high dose opioid maintenance.** This also impacts clarity of thought and contributes to a cognitive sluggishness that may impact his employability.

So for the above reasons, I do support Mr. Garduno as being permanently and totally disabled based upon the criteria outlined by Cigna Insurance. He is one of

Michael Newman, Attorney at Law
August 12, 2015
Page 16

RE:            GARDUNO, BRIAN
SLOC#:         134198
PHYSICIAN:     Bruce Y. Newton, M.D.

those for whom this type of insurance plan is directed – one who has given years of dutiful physically demanding service that has taken its toll on him physically. One of the greatest indicators of a worker's prognosis for return to work is duration of employment with a single employer. Those with chaotic employment history tend to migrate towards disability.

"One employer", employees are typically highly motivated to return to work. I believe he has demonstrated that - return to work motivation through the years - and would not be in this position if it weren't for the significant medical challenges that he faces.

Thank you for the opportunity to offer my opinion in this case.  If you have any further specific questions in regard to this case, please do not hesitate to contact me.

Sincerely,

Bruce Y. Newton, M.D.
BYN/jlv

**ADDENDUM**
Two hours and thirty minutes total time was spent on this case.

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

9.10.15

Sent To: Jacqueline M. CIGNA
Street, Apt. No.; or PO Box No. PO Box 709015
City, State, ZIP+4 Dallas TX 75370

See Reverse for Instructions

PS Form 3800, August 2006

7013 2630 0000 7282 9310

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   JACQUELINE M.
   CIGNA GROUP INSURANCE
   PO BOX 709015
   DALLAS TX 75370

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   GARDUNO
   (Transfer from service label)   7013 2630 0000 7282 9310

PS Form 3811, July 2013          Domestic Return Receipt

P. 1

✻ ✻ ✻  Communication Result Report ( Sep. 16.  2015 10:37AM )  ✻  ✻  ✻

1) Hampton & Newman L. C.
2) 1-307-382-7866

Date/Time: Sep. 16.  2015 10:33AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 7114 | Memory TX | 18669607586 | P. 17 | OK | |

---

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size
E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

---

DAVID A. HAMPTON          **HAMPTON &**          MICHAEL D. NEWMAN
(307) 382-6441                                        118 2nd Street
Fax: (307) 382-7866          **HN NEWMAN**          P.O. Box 1000
                              ATTORNEYS AT LAW          Rock Springs, WY 82902
hnlaw@hamptonnewmanlaw.com          L.C.

September 16, 2015

Jacqueline M.                    Via Fax – (866) 960-7586
CIGNA Group Insurance            Total Pages - 17.
P.O. Box 709015
Dallas TX 75370

CERTIFIED MAIL 7013 2630 0000 7282 9310
RETURN RECEIPT REQUESTED

Name:                    Brian Garduno
Incident Number:         2527371
Plan/Policy Number:      LK0980155
Plant Holder:            Weatherford International
Underwriting Company:    Life Insurance Company of North America

Dear Ms. M.:

As previously disclosed, I am assisting Mr. Garduno with respect to issues that have
arisen regarding CIGNA Group Insurance's denial of his Long-Term Disability benefits
after December 3, 2013.

By this correspondence I am requesting that CIGNA Group Insurance review the
enclosed report offered by Bruce Y. Newton, MD and reconsider their denial. It is the
finding of Dr. Newton that Mr. Garduno is permanently and totally disabled because of
his years of dutiful physically demanding service to Weatherford International.

Your prompt response this is correspondence would greatly be appreciated.

Sincerely yours,

Michael D. Newman

MDN:jb
cc:   Brian Garduno

*John A*
*CIGNA Group Insurance*
212
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 4831
Fax: 860-731-3211
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

**MR. MICHAEL NEWMAN**
**HAMPTON & NEWMAN ATTORNEYS AT LAW**
**P.O. BOX 1000**
**ROCK SPRINGS, WY 82902**

July 26, 2016

| | |
|---|---|
| Name: | **BRIAN GARDUNO** |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL LLC |
| Underwriting Company: | Life Insurance Company of North America |

**DEAR MR. NEWMAN,**

Enclosed is a copy of the Long Term Disability (LTD) claim file and policy. Our claim decision utilized the evidence contained in the file, together with the policy. We did not rely on any particular procedure, guideline or protocol in making the claim determination. All documents relevant to the management of Brian Garduno's claim are contained in the copy of the file. You may request a copy of the Summary Plan Description directly from the employer. Your other requests are either proprietary copyrighted material of CIGNA Group Insurance and to the extent that such items are required to be disclosed as relevant to the management of your client's claim as defined by ERISA it was reflected in the copy of the file referenced above.

Please contact our office at 800-352-0611 ext. 4831 should you have any questions.

Sincerely,

John A
Appeals Specialist

`JUL 2 8 2016`

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

*Ave M. Cantrell*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 5568
Fax: 855-813-4365
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK ST #138
ROCK SPRINGS, WY 82901

October 16, 2015

Name:                           BRIAN GARDUNO
Incident Number:                2527371
Plan/Policy Number:             LK0980155
Plan/Policy Holder:             WEATHERFORD INTERNATIONAL LLC
Underwriting Company:           Life Insurance Company of North America

DEAR MR. GARDUNO,

This letter is regarding your Long Term Disability (LTD) claim. As you were advised in our letter dated March 24, 2015 your claim has been closed.

Please be advised that on September 21, 2015 we received Medical information from Dr. Bruce Y. Newton from Hampton & Newman Attornys at Law L.C..

This information was reviewed and does not change our prior decision.

The new medical reviewed does not change previous decision as evidenced by August 12, 2015 exam antalgic gait, no distal upper/lower extremity atrophy, motor testing 5/5 throughout all four extreities, sensory intact, normal reflexes and symmetrical, no hyperreflexia, Left shoulder 3-, C spine range of motion (ROM) is full, L shoulder 70 to 80abduction/flexion, 70 external rotation, 30 internal, pain L spine ROM, straight leg raise negative.

Your claim remains closed and no further action will be taken on your claim at this time.

Please refer to our letter dated March 24, 2015 for details of the basis of the denial as well as any next steps available to you. If you would like to appeal our denial of your claim, this letter includes instructions on how to appeal, time limits for requesting an appeal, as well as what information may be useful for review.

Please contact our office at 800-352-0611 ext. 5568 should you have any questions.

Sincerely,

*Ave M. Cantrell*

Ave M. Cantrell
Disability Claim Manager

CIGNA Group insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, includ Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provide insurance company subsidiaries and not by CIGNA Corporation.



*Ave M. Cantrell*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 5568
Fax: 855-813-4365
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. BRIAN GARDUNO
1804 ELK ST #138
ROCK SPRINGS, WY 82901

October 16, 2015

| | |
|---|---|
| Name: | BRIAN GARDUNO |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL LLC |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. GARDUNO,

We are in receipt of a request for appeal of your Long Term Disability claim under the above referenced policy number.

Your appeal request is being referred to our Disability Appeals Team. To ensure an independent review, the Disability Appeals Team is separate from the team who rendered the previous decision on your claim.

Your complete file, including any additional information submitted, will be considered during the appeal review process. We ask that you carefully review the enclosed original denial letter dated March 24, 2015 to ensure that any and all available medical or other documentation related to your claim has been submitted.

A member of the Appeals Team will be contacting you within 15 days of this letter to discuss the appeal process and answer any questions you may have. Please advise our Appeal Team at that time whether you have additional information that you would like to submit in support of your appeal. If there is additional information you would like us to consider, we will make reasonable efforts to assist in gathering this information on your behalf.

If you have any questions, you may contact the Disability Appeal Team at the below listed phone number.

**CIGNA Group Insurance**
**Disability Appeals Team**
**P.O. Box 709015**
**Dallas, TX 75370-9015**
**1.800.352.0611, ext. 4963**

Please be aware that as part of the appeals process, you may have access to information relevant to your claim, which will be provided to you upon request free of charge.

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by insurance company subsidiaries and not by CIGNA Corporation.



October 16, 2015
Page 2

Please contact our office at 800-352-0611 ext. 5568 should you have any questions.

Sincerely,

*Ave M. Cantrell*

Ave M. Cantrell
Disability Claim Manager

*John A*
*CIGNA Group Insurance*
212
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 4831
Fax: 860-731-3211
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. MICHAEL NEWMAN
HAMPTON & NEWMAN ATTORNEYS AT LAW
P.O. BOX 1000
ROCK SPRINGS, WY 82902

October 21, 2015

| | |
|---|---|
| Name: | BRIAN GARDUNO |
| Incident Number: | 2527371 |
| Plan/Policy Number: | LK0980155 |
| Plan/Policy Holder: | WEATHERFORD INTERNATIONAL LLC |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. NEWMAN,

We are writing in response to your appeal request received in our office on September 16, 2015 for your Long Term Disability claim.

Our letter dated March 24, 2014, advised you of the denial of your claim for Long Term Disability benefits. It indicated that in order to appeal the decision, a written request for review must be sent within 180 days from the date you received our letter. However, your request for review of the claim decision was received on September 16, 2015, more than 180 days from the date you received the claim denial letter.

Therefore, please provide us with an explanation outlining the reason for your delay in requesting a review of your claim decision. Upon receipt of your explanation, we will determine if the explanation for your delayed appeal request is reasonable.

Please provide us your explanation within 30 days from the date of this letter. A return envelope is enclosed.

If we do not receive a response within 30 days, no further review of your claim decision will occur and no further action will be taken.

Please contact our office at 800-352-0611 ext. 4831 should you have any questions.

Sincerely,

*John A*

John A
Appeals Specialist

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

11

Jan. 13. 2016  2:44PM      ...pton & Newman L. C.                    No. 8703.. P. 2/4  COPY

**DAVID A. HAMPTON**

(307) 382-6443
Fax: (307) 382-7866

hnlaw@hamptonnewmanlaw.com

# HAMPTON & NEWMAN
### ATTORNEYS AT LAW
##### L.C.

**MICHAEL D. NEWMAN**

118 3rd Street
P.O. Box 1000
Rock Springs, WY 82902

November 20, 2015

John A.
Appeals Specialist
CIGNA Group Insurance
PO Box 709015
Dallas TX 75370-9015

Fax:  860-731-3211
Pages: 2

| Ref: | Brian Garduno | |
|---|---|---|
| | Incident: | 2527371 |
| | Plan/Policy: | LK0980155 |
| | Plan/Policy Holder: | Weatherford International Inc. |
| | Underwriting Company: | Life Insurance Company of North America |

### CERTIFIED MAIL 7009 0080 0001 4396 9161

Dear John A.:

Thank you for your correspondence dated October 21 2015 acknowledging receipt of my correspondence providing additional medical information for review dated September 16, 2015. In my correspondence I provided you with the medical review report of Dr. Newton dated August 12, 2015.

In your October 21, 2015 correspondence you indicated our request for review was not within 180 days and requested an explanation regarding the delay in our request.

Please be advised that review of your decision to discontinue benefits was made on April 4, 2014 in response to your denial of benefits dated March 24, 2014. Our September 16, 2015 correspondence was simply providing additional information to review. Accordingly, we do not feel that you have characterized our September 16, 2015 correspondence correctly. Review had been requested in April of 2014.

As you know from review of the extensive medical records in this matter, Mr. Garduno has sustained multiple orthopedic challenges and multiple medical problems. This is confirmed by Dr. Newton in his August 2015 report. Mr. Garduno has undergone surgical interventions since your March 24, 2014 correspondence. Any delays in providing additional information is a result of our attempts to gather ongoing treatment records, as well as his ongoing treatment issues. We believe any delays are reasonable in the context of his complicated medical circumstances.

12

Jan. 13. 2016  2:44PM     ˙˙ ipton & Newman L.C.                    No. 8703   P. 3/4

    Thank you for considering this explanation and request to conduct further review of the denial of continued long term disability claims. We believe the additional information overwhelmingly supports continued long term disability benefits.

    If you have any further questions or need additional information please do not hesitate to contact me.

Sincerely yours,

*Michael D. Newman*

Michael D. Newman

Enclosures

Jan. 13. 2016   2:44PM   ""mpton & Newman L.C.                               No. 8703   P. 4/4
                                                                                        P. 1

```
*  *  * Communication Result Report ( Nov. 20. 2015  3:43PM ) *  *  *
```

                                                    1) Hampton & Newman L.C.
                                                    2) 1-307-362-7886

Date/Time: Nov. 20. 2015  3:40PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 8039 | Memory TX | 18607313211 | P.  2 | OK | |

```
-------------------------------------------------------------------------------
Reason for error
   E. 1) Hang up or line fail          E. 2) Busy
   E. 3) No answer                     E. 4) No facsimile connection
   E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax
```

*John A*
*CIGNA Group Insurance*
212
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 4831
Fax: 860-731-3211
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. MICHAEL NEWMAN
HAMPTON & NEWMAN ATTORNEYS AT LAW
P.O. BOX 1000
ROCK SPRINGS, WY 82902

November 20, 2015

Name:                          BRIAN GARDUNO
Incident Number:               2527371
Plan/Policy Number:            LK0980155
Plan/Policy Holder:            WEATHERFORD INTERNATIONAL LLC
Underwriting Company:          Life Insurance Company of North America

DEAR MR. NEWMAN,

We are writing in response to your appeal request received in our office on September 16, 2015 for your client's Long Term Disability (LTD) claim.

Our letter dated March 24, 2014, advised you of the denial of your client's claim for Long Term Disability benefits. It indicated that in order to appeal the decision, a written request for review must be sent within 180 days from the date you received our letter. However, your request for review of the claim decision was received on September 16, 2015, more than 180 days from the date you received the claim denial letter.

In our letter dated October 21, 2015 we asked that you please provide us with an explanation outlining the reason for your delay in requesting a review of your client's LTD claim decision within 30 days.

To date we have not received a response from you. At this time no further review of your client's claim decision will occur and no further action will be taken.

Please contact our office at 800-352-0611 ext. 4831 should you have any questions.

Sincerely,

*John A*

John A
Appeals Specialist

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided insurance company subsidiaries and not by CIGNA Corporation.

*13*

**DAVID A. HAMPTON**

(307) 382-6443
Fax: (307) 382-7866

hnlaw@hamptonnewmanlaw.com

# HAMPTON & NEWMAN
### ATTORNEYS AT LAW
L.C.

**MICHAEL D. NEWMAN**

118 3rd Street
P.O. Box 1000
Rock Springs, WY 82902

January 13, 2016

John A.
Appeals Specialist
CIGNA Group Insurance
PO Box 709015          Fax:  860-731-3211
Dallas TX 75370-9015   Pages: 2

Ref:   Brian Garduno
       Incident:                  2527371
       Plan/Policy:               LK0980155
       Plan/Policy Holder:        Weatherford International Inc.
       Underwriting Company:      Life Insurance Company of North America

### CERTIFIED MAIL 7013 2630 000 7282 9150

Dear John A.:

Thank you for your correspondence dated November 20, 2015 acknowledging receipt of my appeal request received by your office on September 16, 2015 for my client's Long Term Disability (LTD) claim.

Your November 20, 2015 letter alleges that our office did not respond within the 30 day time period set in   your October 21, 2015 correspondence. This is incorrect. Please find the faxed correspondence and our certification of delivery to your office dated November 20, 2015, attached hereto. This was one day in advance of your deadline, and I would note that your correspondence advising that we had not timely responded was also mailed one day before the deadline.

Accordingly, please review Mr. Garduno's claims and the information we recently provided, as required.  Thank you for considering this explanation and request to conduct further review of the denial of continued long term disability claims.  If you have any further questions or need additional information please do not hesitate to contact me.

Sincerely yours,

Michael D. Newman

Enclosures

# Ross, Ross & Santini, LLC

2402 Pioneer Ave.
Cheyenne, WY 82001

(307) 632-8957
(307) 632-8960 *Fax*

April 22, 2016
*Sent Via Certified Mail*

John A.
Cigna Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Re:  Name:    Brian Garduno
     Incident:   2527317
     Plan/Policy No.   LK0980155
     Plan/Policy Holder: Weatherford International, LLC
     Underwriting Company:   Life Insurance Company of North America

Dear John A.,

I have been retained by Brian Garduno together with Michael D. Newman in reference to his claims for long term disability benefits. I am in receipt of Mr. Newman's letter to you dated January 13, 2016, in which he requested a review of the claims decision made in Mr. Garduno's case. There has been no response to Mr. Newman's letter.

This letter is to request that you provide us with a full and complete copy of the claims file so that we may review the information relied upon by CIGNA in reaching its decision to take no further action on Mr. Garduno's claim. We believe that CIGNA is acting arbitrarily, capriciously and has abused its discretion in refusing to consider Mr. Garduno's claim specifically in light of Mr. Newman's letter dated April 4, 2014 in which he timely objected to your determination of Mr. Garduno's long term disability benefits. Please be advised it is our intention to seek redress of CIGNA's continued refusal to provide information through the US District Court for the District of Wyoming if necessary.

Very Truly Yours,

George Santini

George Santini

Cc:   Mike Newman
      Mr. Garduno

---

Anthony F. Ross
tony@ross-santini.com

♦

George
george@ross-san

15